UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(WEST PALM BEACH)

CASE NO.: 9:20-cv-81544-ALTMAN/Reinhart

GREAT LAKES INSURANCE SE,

     Plaintiff/Counter-Defendant,

v.

BRYAN CRABTREE and BETHEA
CRABTREE,

     Defendants/Counter-Plaintiffs.

_____/

## DEFENDANTS, THE CRABTREES', STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S STATEMENT [D.E. 117], AND STATEMENT OF ADDITIONAL FACTS

Defendants/Counter-Plaintiffs, BRYAN CRABTREE and BETHEA CRABTREE, by and through the undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules for the Southern District of Florida, hereby submit this Statement of Facts in Opposition to Plaintiff's Statement [D.E. 117], and Statement of Additional Facts, as follows:

1. Undisputed, as Defendants/Counter-Plaintiffs, BRYAN CRABTREE and BETHEA CRABTREE ("the Crabtrees"), are without knowledge as to the business organization of Concept Special Risks Ltd.

2. Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees, and the Crabtrees had never met or spoke with Burns & Wilcox before. Declaration of Crabtree, ¶¶ 19-27, attached hereto. Burns & Wilcox is GREAT LAKES' contractual agent, providing GREAT LAKES the ability, via contractual agreement, to operate and provide insurance policies within the United States. Please see Contractual Operating Agreement between GREAT LAKES and Burns & Wilcox, (of record at Decl. of Usher, D.E. 117-1); Declaration of Famulari, ¶¶ 4-6, 8-11, attached hereto. Furthermore, GREAT LAKES' subject statement of fact is not supported by admissible evidence as "agency" is a legal question for the

Court. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4). *See Naviera Neptuno S.A. v. All Int'l Freight Forwarders, Inc.*, 709 F.2d 663, 665 (11th Cir. 1983); *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1522 (11th Cir. 1985). Further, Burns & Wilcox are specifically listed upon Concept Special Risks' website, under the section providing contact information for marine "brokers," wherein Burns & Wilcox is listed, with Matthew Evans identified as the "contact name."

*Yacht Brokers (Non-Coastal USA Brokers)*, Concept Special Risks Ltd., https://www.special-risks.com/brokers.php (last visited Dec. 10, 2021).

3.      Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Decl. Crabtree, ¶¶ 19-27. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees. *Id.* "Concept's Operating Instructions" is a contract between GREAT LAKES/Concept Special Risks and Burns & Wilcox and is signed only by Burns & Wilcox. Decl. Crabtree, ¶¶ 19-27; Decl. Famulari, ¶ 6. The Crabtrees are not a party to, and had no knowledge of, the contractual relationship between Burns & Wilcox and GREAT LAKES. *Supra* ¶ 1.

4.      Disputed, as the Crabtrees disagree and refute GREAT LAKES' attempt to explain and/or justify the "role of surplus lines brokers (like Burns & Wilcox)."  Decl. Famulari, ¶ 6. Undisputed or knowledge as to what documents were provided to GREAT LAKES' agent, Burns & Wilcox, but that certain documents were provided to GREAT LAKES' agent, Burns & Wilcox. Depo Usher, *infra*.

5.      Disputed and without knowledge, as questions of contract formation (i.e., offer and acceptance) are questions of fact and thus, GREAT LAKES' subject statement of fact is not supported by admissible evidence. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4).

6.        Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees. Decl. Famulari, ¶¶ 4-11; Decl. Crabtree, ¶¶ 19-27. The Crabtrees do not dispute that an application for insurance was submitted via insurance agent, Mr. Schirmer, to GREAT LAKES' agent, Burns & Wilcox, who would have provided same to GREAT LAKES/Concept Special Risks.

7.        Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees. Decl. Famulari, ¶¶ 4-11; Decl. Crabtree, ¶¶ 19-27. The Crabtrees are without knowledge as to the date that GREAT LAKES received the subject Letter of Compliance.

8.        Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. Further disputed as GREAT LAKES has contended that it was not in receipt of the subject Stetler Survey at the time of receiving the Letter of Compliance. *See* Decl. of Usher, ¶ 23The Stetler Survey had been submitted to GREAT LAKES' operating agent, Burns & Wilcox on several occasions prior to the submission of the subject Letter of Compliance. *See infra*, Statement of Additional Facts.

9.        Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. A review of the subject document will also show that another item is marked as "All but Fixed." Further disputed as GREAT LAKES has contended that it was not in receipt of the subject Stetler Survey at the time of receiving the Letter of Compliance. *See* Decl. of Usher, ¶ 23. The Stetler Survey had been submitted to GREAT LAKES' operating agent, Burns & Wilcox on several occasions prior to the submission of the subject Letter of Compliance. *See infra*, Statement of Additional Facts.

10.       Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. Disputed as to any inference or suggestion that the Crabtrees made any "misrepresentation." Decl. Crabtree, ¶¶ 29, 63.

11.       Disputed, as to Concept Special Risk's purported "standard practice," as Mr. Usher has indicated the subjective nature of all of Concept Special Risks' "practices," and Mr. Usher's ability to waive any purported requirement or practice. *See infra*, Statement of Additional Facts, Usher Depo; Decl. Famulari, ¶ 12. Further disputed as GREAT LAKES' purported fact is contradicted by the statement within the Operating Agreement between itself and its agent, Burns

3

& Wilcox, which states that "[w]e will require a current survey on a vessel in order to provide a quote/indication on any vessel in excess of 25 years of age," *see* Operating Agreement, Decl. Usher, 117-1, Ex. 1, at ¶ 3, not "vessels five years or older," as claimed.

12. Disputed or without knowledge, as to the claim that "Concept could not agree to issue a standard one-year policy." Concept Special Risks/GREAT LAKES decided they had enough information to issue an insurance "binder," which was operational and provided coverage on the date of the loss. Decl. Famulari, ¶ 13. There are no facts on record to support the contention that a binder/policy of insurance was not issued, as a binder/policy was issued by GREAT LAKES. See Binder/Policy, of record at D.E. 1-2. The "Period of Cover" [term] is noted as "from April 23, 2019, to April 23, 2020." *Id.* at p. 1. The Operation Agreement proves the falsity of this purported fact, as it indicates that "[o]nce a risk has been allocated a policy number, we will issue a temporary binder/policy." Operating Agreement, Decl. Usher, 117-1, Ex. 1, at ¶ 7. The Stetler Survey had been submitted to GREAT LAKES' operating agent, Burns & Wilcox, on several occasions prior to the submission of the subject Letter of Compliance. *See Infra*, Statement of Additional Facts; Decl. Crabtree, ¶ 28.

13. Undisputed as to the representation that GREAT LAKES issued a "binder." Disputed as to the claim that this binder/policy was issued in response to certain information disclosed, or the legal conclusion that certain information was "material." Decl. Famulari, ¶¶ 14-15, 19, 24-25. GREAT LAKES' subject statement of fact is not supported by admissible evidence as "materiality" is a legal question for the Court. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4).

14. Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. GREAT LAKES/Concept Special Risks was provided all such information, via its operating agent, Burns & Wilcox, or was provided same upon request after the loss. *See* Decl. Famulari. Further disputed as GREAT LAKES has contended that it was not in receipt of the subject Stetler Survey at the time of receiving the Letter of Compliance. The binder/policy indicated that the LOC was not accepted. Decl. Famulari, ¶¶ 14-18. The Stetler Survey had been submitted to GREAT LAKES' operating agent, Burns & Wilcox, on several occasions prior to the submission of the subject Letter of Compliance. *See infra*, Statement of Additional Facts.

15. Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. Further disputed as GREAT LAKES has contended that it was not in receipt of the subject Stetler Survey at the time of receiving the Letter of Compliance. Decl. Famulari, ¶¶ 14-

18. Disputed as to GREAT LAKES/Concept Special Risks' actions/document requests after the loss and beyond May 24, 2019, that operated as a waiver of this provision and/or estop GREAT LAKES from insisting upon strict compliance with this provision. *See* Decl. Famulari ¶ 16 (and Exhibits thereto).

16.     Undisputed that the subject loss occurred on or about May 7, 2019, while Vessel was "on the hard" and removed from navigable waters undergoing major retrofit/repairs, and while the binder/policy was in full effect.

17.     Undisputed that an "investigation" occurred. Disputed that this investigation was proper or occurred in good faith, as GREAT LAKES and its agents changed their position several times during the investigation process.

18.     Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees. Decl. Famulari, ¶¶ 4-11; Decl. Crabtree, ¶¶ 19-27. Concept Special Risks continued to seek documents after May 24, 2019. *See infra,* Statement of Additional Facts.

19.     Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. GREAT LAKES' subject statement of fact is not supported by admissible evidence. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 801.

20.     Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees. Decl. Famulari, ¶¶ 4-11; Decl. Crabtree, ¶¶ 19-27. Concept Special Risks continued to seek documents after May 24, 2019. *See infra*, Statement of Additional Facts.

21.     Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. GREAT LAKES' subject statement of fact is not supported by admissible evidence. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 801.

22.     Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. GREAT LAKES' subject statement of fact is not supported by admissible evidence. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 801. Further disputed as

GREAT LAKES has contended that it was not in receipt of the subject Stetler Survey at the time of receiving the Letter of Compliance. Decl. Crabtree, ¶ 65. The Stetler Survey had been submitted to GREAT LAKES' operating agent, Burns & Wilcox, on several occasions prior to the submission of the subject Letter of Compliance. *See infra*, Statement of Additional Facts.

23.     Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees. Decl. Famulari, ¶¶ 4-11; Decl. Crabtree, ¶¶ 19-27. Disputed, as to the contention that Concept Special Risks/GREAT LAKES was not in possession of certain documents on or after May 24, 2019. Further disputed, as GREAT LAKES' subject statement of fact is not supported by admissible evidence, as same statement is missing the requisite record citation. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4). Further disputed as GREAT LAKES has contended that it was not in receipt of the subject Stetler Survey at the time of receiving the Letter of Compliance. Decl. Crabtree, ¶ 65. The Stetler Survey had been submitted to GREAT LAKES' operating agent, Burns & Wilcox, on several occasions prior to the submission of the subject Letter of Compliance. *See infra*, Statement of Additional Facts. Concept Special Risks continued to seek documents after May 24, 2019. *See id.*

24.     Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees. Decl. Famulari, ¶¶ 4-11; Decl. Crabtree, ¶¶ 19-27. Disputed, as to the contention that Concept Special Risks/GREAT LAKES was not in possession of certain documents on or after May 24, 2019. Further disputed, as GREAT LAKES' subject statement of fact is not supported by admissible evidence, as same statement is an out-of-court statement by a non-party, Mr. Matthew Evans – GREAT LAKES' agent. *See* Fed. R. Evid. 801; Fed. R. Civ. P. 56(c)(2) and (c)(4).

25.     Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees. Decl. Famulari, ¶¶ 4-11; Decl. Crabtree, ¶¶ 19-27. Disputed, as to the contention that Concept Special Risks/GREAT LAKES was not in possession of certain documents on or after May 24, 2019. Further disputed, as GREAT LAKES' subject statement of fact is not supported by admissible evidence, as same statement is an out-of-court statement/email by a non-party, Mr. Matthew Evans – GREAT LAKES' operating agent. See Fed. R. Evid. 801;

6

Fed. R. Civ. P. 56(c)(2) and (c)(4). Undisputed that Concept Special Risks continued to seek documents after May 24, 2019. *See infra*, Statement of Additional Facts, and that on or about June 7, 2019, same documents were provided, again, to GREAT LAKES via its operating agent, Burns & Wilcox. *Id.*

26.     Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. GREAT LAKES' subject statement of fact is not supported by admissible evidence, as the Stetler Survey is not proper summary judgment evidence as it is not properly authenticated. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 801.

27.     Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself, as GREAT LAKES has not supported its contention that representations were made stating that "all recommendations were complete as of May 2, 2019." GREAT LAKES' subject statement of fact is not supported by admissible evidence, as GREAT LAKES' citations are not proper summary judgment evidence, as it appears that GREAT LAKES is citing to a court document/the supposition of its own counsel. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 801. The Crabtrees dispute that "numerous recommendations in the Stetler Survey had not been completed, including all recommendations relating to the Vessel's fire extinguishers." Decl. Crabtree, ¶¶ 40, 37, 39, 50, 51, 52, 56.

28.     Undisputed that GREAT LAKES retained Arnold & Arnold, Inc., to investigate the loss. Disputed that this investigation was proper or occurred in good faith, as GREAT LAKES and its agents changed their position several times during the investigation process. *See* Decl. Famulari.

29.     Undisputed or without knowledge that Arnold & Arnold retained Roy Cramer.

30.     Undisputed or without knowledge as to the actions of Roy Cramer.

31.     Disputed as a mischaracterization that "Arnold & Arnold was asked to determine whether all of the Stetler Survey recommendations had been complied with," as Arnold & Arnold and assigned adjuster Ian D. Allen initially adjusted the loss as the loss was covered. *Infra*, Statement of Additional Facts. Internal emails show that Concept Special Risks corresponded with the Arnold & Arnold adjusters and demanded that Arnold & Arnold change their position regarding the investigation. *Id.*

32.      Disputed as a mischaracterization. Requests for additional documents from Mr. Allen to Mr. Crabtree were met with confusion as Mr. Crabtree indicated that all documents had been submitted to the insurance company or its representatives/agents. Decl. Crabtree, ¶ 33.

Contrary to GREAT LAKES' purported "fact," Mr. Allen initially adjusted the loss and as if same was covered and assured Mr. Crabtree as to same, before being instructed otherwise by Concept Special Risks. Decl. Crabtree, ¶¶ 43-44.

33. Disputed as a mischaracterization. Mr. Crabtree submitted and resubmitted several documents. Decl. Crabtree, ¶¶ 10, 28. The Vessel was damaged as it underwent tens of thousands of dollars of work, while undergoing major retrofit and repair prior to its maiden voyage. Decl. Crabtree, ¶ 57.

34. Disputed as to Alan Ridenour's unsubstantiated opinion and the contents of same. The Crabtrees dispute that Mr. Ridenour was able to determine which survey items had not been complied with, post-incident. Decl. Crabtree, ¶¶ 40, 37, 39, 50, 51, 52, 56; Decl. Famulari, ¶ 22. Certain items were removed from the damaged Vessel and secured by Mr. Crabtree following the loss following. Decl. Crabtree, ¶¶ 47, 49, 54-55. Internal emails show that Mr. Ridenour's opinion was specifically requested by Concept Special Risks/GREAT LAKES, and that Mr. Ridenour was the second adjuster had to "step in" over Mr. Allen, following his inability to provide the insurance company the position it sought. Decl. Famulari, ¶ 20. Further disputed as inadmissible as internal documents reflect the impossibility for the adjusting company to accurately determine what items had or had not been complied with, as the adjusting company did not survey the post-loss Vessel with this in mind. Decl. Famulari; *infra*, Statement of Additional Facts. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 403 (any probative value is substantially outweighed by undue prejudice, misleading the jury, *inter alia*).

35. Disputed or without knowledge as to Mr. Usher's stated experience. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 403 (any probative value is substantially outweighed by undue prejudice, confusing the issues, misleading the jury, needlessly presenting cumulative evidence, *inter alia*); Fed. R. Evid. 401 (irrelevant).

36. Disputed as to the bolstering statement that Mr. Usher is "a prudent and intelligent marine insurance underwriter." *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 403 (any probative value is substantially outweighed by undue prejudice, confusing the issues, misleading the jury, needlessly presenting cumulative evidence, *inter alia*); Fed. R. Evid. 401 (irrelevant). Disputed as to what Mr. Usher "considers" as it is clear that Mr. Usher's practices are wholly subjective. Decl. Famulari, ¶ 12. Further disputed as a false or incorrect statement as Mr.

8

Usher issued a binder/policy (with a set premium and terms), purportedly without receipt of the pre-insurance survey.

37.    Disputed as to the statement that "Concept would never agree to insure a vessel that was not properly maintained in a seaworthy condition or in keeping with the requirements of the United States Coast Guard," as same statement makes the inference that the Crabtrees' Vessel falls within this category. To the contrary, the Crabtrees' Vessel was in the process of undergoing all of the repairs necessary to bring the recently purchased Vessel above any and all minimum standards, before the subject loss cut the repair efforts short. Decl. Crabtree, ¶¶ 37, 61.

38.    Disputed that GREAT LAKES have provided sufficient affirmative proof or summary judgment evidence to support the contention that the Crabtrees "had not complied with [] the recommendation to have the Vessel's fire extinguishers brought into compliance with USCG requirements." Declaration of Crabtree. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4).

39.    Disputed that the Crabtrees did not comply with the recommendation to have the Vessel's fire extinguisher brought into compliance, as the Crabtrees did have the proper USCG fire extinguisher. Decl. Crabtree, ¶¶ 38, 41.

40.    Undisputed that the Crabtrees complied with Magistrate Judge Reinhart's Order following a discovery hearing, *see* Order, D.E. 91, and that several documents, including several receipts within the Crabtrees' care custody and control, were provided to GREAT LAKES' counsel. Disputed that these documents may be relied upon by GREAT LAKES and/or its adjusters to reach additional, incorrect assumptions/inference regarding compliance. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 403 (any probative value is substantially outweighed by undue prejudice, confusing the issues, misleading the jury, needlessly presenting cumulative evidence, *inter alia*); Fed. R. Evid. 401 (irrelevant); *See* Mot., D.E. 119.

41.    Disputed or without knowledge as to what was provided to Mr. Ian D. Allen. The Crabtrees' note that a pending Motion to Strike is before the Court regarding the testimony of Mr. Ian D. Allen. *See* Mot., D.E. 119. The Crabtrees dispute the "findings" of Mr. Allen. Decl. Crabtree, ¶¶ 3, 59, 42-44.

42.    Disputed or without knowledge as to what was provided to Mr. Ian D. Allen. The Crabtrees' note that a pending Motion to Strike is before the Court regarding the testimony of Mr. Ian D. Allen. *See* Mot., D.E. 119. The Crabtrees dispute the "findings" of Mr. Allen. Decl. Crabtree, ¶¶ 3, 59, 42-44.

43. Disputed that GREAT LAKES may rely upon the policy provision it purports to highlight. The Crabtrees direct the Court to the Defendants' Response to Plaintiff's Motion for Judgment on the Pleadings, D.E. 70, which addresses Plaintiff's incorrect position on choice-of-law. Disputed, as to GREAT LAKES' attempt to quantify or summarize a document that speaks for itself. GREAT LAKES' subject statement of fact is not supported by admissible evidence. *See* Fed. R. Civ. P. 56(c)(2) and (c)(4); *see also* Fed. R. Evid. 801.

44. Disputed, as the Crabtrees do not have any "agency" relationship with "surplus lines insurance broker," Burns & Wilcox. Burns & Wilcox does not have the ability or authority to act on the behalf of the Crabtrees. Decl. Famulari, ¶¶ 4-11; Decl. Crabtree, ¶¶ 19-27. Burns & Wilcox is GREAT LAKES' contractual broker and agent, providing GREAT LAKES the ability, via contractual agreement, to operate and provide insurance policies within the United States. Please see Contractual Operating Agreement between GREAT LAKES and Burns & Wilcox, of record at Decl. of Usher, DE 117-1). *Id.* Furthermore, GREAT LAKES' subject statement of fact is not supported by admissible evidence as "agency" and contract interpretation are legal questions for the Court. See Fed. R. Civ. P. 56(c)(2) and (c)(4).

**THE CRABTREES' STATEMENT OF ADDITIONAL FACTS**

1. The Crabtrees had recently purchased and contemporaneously procured coverage for their Vessel (S/V "BRANDISON," a 2000 43 ft Privilege vessel with Volvo twin 39 hp diesel engines), only days before she was severely damaged when an adjacent vessel caught fire while "on the hard" at a boatyard. Decl. Crabtree, ¶¶ 4-12.

2. The Crabtrees selected the Cracker Boy Boat Works, Inc. boatyard, located in Riviera Beach, Florida, to commence retrofit and repairs upon the Vessel prior to her maiden voyage. Decl. Crabtree.

3. It is undisputed that the Crabtrees purchased and procured an "agreed value," "all-risks" insurance policy on their newly purchased Vessel, issued by GREAT LAKES, valid from April 23, 2019, until April 23, 2020. Decl. Crabtree, ¶¶ 7-9.

4. The subject policy/binder provides an agreed value coverage of $250,000.00 in Hull coverage, $25,000.00 in Personal Property coverage, as well as additional coverages. Pl.'s Response to Request for Admissions, ¶ 14, attached hereto.

5. Notably, the policy/binder indicates that documents were outstanding, despite same documents already having been submitted. Declaration of Crabtree. Policy/Binder, of record at D.E. 1-2.

6. Additionally, the policy/binder indicates that the "LOC [Letter of Compliance] cannot be accepted without the survey – please provide for review." D.E. 1-2, thus, GREAT LAKES cannot assert an argument based upon the Letter of Compliance that was not accepted. Decl. Famulari, ¶¶ 14, 19.

7. A valid and enforceable policy/binder was in place at the time of the subject loss. RFA ¶¶ 13, 8; Decl. Famulari, ¶¶ 18, 13.

8. On the morning of May 7, 2019, approximately fifteen (15) days after procuring insurance upon the Vessel, an adjacent yacht fire occurred at the boatyard and the S/V BRANDISON sustained serious damage (heat, smoke, water, etc.) due to the fire. Decl. Crabtree, ¶ 4, 11; RFA ¶¶ 1, 8 (Plaintiff admits damage).

9. The Crabtrees loss was fortuitous, occurred "on the hard," and removed from navigable waters, due to no fault of the Crabtrees. Decl. Crabtree, ¶¶ 15; Decl. Famulari, ¶ 2.

10. It cannot be disputed that the Crabtrees' fortuitous Vessel loss is in no way connected to application for insurance. Decl. Famulari, ¶ 3,

11

11. GREAT LAKES has admitted and cannot dispute that the subject "loss occurred during the active binder period." RFA ¶ 8.

12. Immediately following the loss, The Crabtrees timely notified GREAT LAKES of their loss, and began immediate mitigation efforts, including moving equipment and damaged personal property off the Vessel. Decl. Crabtree, ¶ 14.

13. Mr. Crabtree removed items of personal property from the severely damaged Vessel. Decl. Crabtree, ¶¶ 47, 49, 44-45.

14. As is further confirmed by internal emails between the adjusters and Arnold & Arnold and Concept Special Risks, it would be completely futile and fruitless to an adjuster to attempt to claim that certain items were or were not completed, with the Vessel in its damaged state. *id.*

> On Jun 18, 2019, at 1:16 PM, Ian A & A <ian@arnoldoffice.com> wrote:
>
> Alan
>
> No, we hired a surveyor to attend. And at that point it was not an issue, so a request was not made to inspect as such. Also, many of the required items would have been removed.
>
> Ian
>
> On Jun 18, 2019, at 4:54 PM, Alan Ridenour <alan@arnoldoffice.com> wrote:
>
> Ian:
>
> Did you conduct a survey of the vessel showing compliance with the various repair recommendations in the pre-insurance survey?
>
> Alan

15. Rather than rightfully indemnifying its insureds in accordance with the subject policy [and possibly initiating a subrogation action against the offending vessel], Plaintiff, GREAT LAKES, denied the claim, RFA ¶¶ 32 (Plaintiff admits refused to pay claim), and contemporaneously brought suit before the United States District Court for the District of Montana, under a knowingly false assertion: that the Crabtrees were residents of Montana. RFA ¶¶ 32.

16. GREAT LAKES via its "managing general agent" and "underwriter," Decl. Usher, ¶¶ 4, 6. D.E. 117-1. Concept Special Risks employed Arnold & Arnold, Inc. to adjust the loss.

17. Mr. Ian D. Allen was Arnold & Arnold's initial adjuster on the file. Decl. Crabtree, ¶ 42.

18. Mr. Ian D. Allen adjusted the loss as if same was a covered loss and made representations to Mr. Crabtree reassuring that the loss was covered. Decl. Crabtree, ¶ 43-44.

19.     The Crabtrees worked with Mr. Sam Schirmer of Schirmer Insurance Group, LLC, who communicated with GREAT LAKES' agent, Burns & Wilcox. Decl. Crabtree, ¶ 27.

20.     Mr. Crabtree provided the Stetler Report (which was revised on or about March 25, 2019, by Brian Stetler), via Mr. Sam Schirmer, to Mr. Hunter Little of Burns & Wilcox. Decl. Crabtree, ¶ 28.

21.     On or about April 4, 2019, Mr. Crabtree provided the Second Revised Stetler ("Final Survey") to Mr. Schirmer, which was then provided to GREAT LAKES' operating agent, Burns & Wilcox, on or about April 4, 2019. *Id.*

22.     The Operating Agreement, between Concept Special Risks/GREAT LAKES and their operating agent, Burns & Wilcox, indicates that "[w]e will require a current survey on a vessel in order to provide a quote/indication on any vessel. . . ." Decl. Usher, 117-1, Ex. 1, at ¶ 3.

23.     GREAT LAKES violated its own operating agreement with Burns & Wilcox if it provided a "quote/indication" without "a current survey." *See id.* It follows that GREAT LAKES was in possession, either itself or constructively via its operating agent, Burns & Wilcox, of the Stetler Survey at the time it issued a quote, indication, or policy/binder. Decl. Crabtree, ¶ 10.

24.     In fact, all of the documents that were requested or marked as outstanding had been provided to GREAT LAKES' agent, Burns & Wilcox by Sam Schirmer. *Id.*

25.     Still, GREAT LAKES, Concept Special Risks, and adjusters at Arnold & Arnold sought and requested that documents be resubmitted, including after May 24, 2019. Decl. Crabtree, ¶ 45; Decl. Famulari (exhibits).

26.     Mr. Crabtree objected to re-providing documents already provided, including his previously submitted "hurricane plan," especially after the loss had occurred. Decl. Crabtree, ¶ 33-35.

27.     That Kathy Smith sought documents after May 24, 2019. Decl. Famulari (exhibits).

28.     Arnold & Arnold initially treated the loss as a covered loss, including via reassuring statements to Mr. Crabtree. Decl. Crabtree, ¶ 43-44.

29.     Ins Co. did not conduct any such inspection with "survey compliance" in mind – instead they take the after-the-fact, piecemeal, and assumed position that certain items were not complied with, upon the review of photos and certain receipts within the Crabtrees' possession. *Supra*.

30.     Concept Special Risks disagreed with Arnold & Arnold's adjustment/findings of the loss, requiring Arnold & Arnold to "adjust" in a way that was unfamiliar and was a change of position to their adjuster's prior statements. *Supra*.

31.     Internal documents show that Mr. Ian D. Allen was "taken off the file," after his hesitancy to treat the loss of a denial of coverage, and that a Mr. Alan Ridenour stepped in to provide an unsubstantiated opinion that was requested by the insurance company/underwriters. *Supra*.

32.     On October 27, 2021, the Crabtrees conducted the "continued" deposition of GREAT LAKES' 30(b)(6) Corporate Representative, Mr. B.A. ("Tony") Usher, underwriter at Concept Special Risks. *See* B.A. Usher Deposition, attached hereto.

33.     Mr. Usher confirmed that Concept Special Risks is a "managing general agent" of principal, GREAT LAKES INSURANCE SE, responsible for both underwriting and insurance claims. *Id.*

34.     Mr. Usher confirmed that GREAT LAKES issued a binder of insurance, via Burns & Wilcox, as GREAT LAKES would have had sufficient information. Depo Usher, p. 57:10-60:17.

35.     Mr. Usher confirmed that "we weren't aware of any issues with the letter of compliance until we received the survey. And we didn't receive the survey until the 7th of June. Until we received the survey, we had no idea what recommendations were in the survey." Usher Depo, p. 64:21-65:11.

36.     Mr. Usher confirmed that Burns & Wilcox were provided a copy of a "Brokers Manual." Usher Depo, p. 45:1-6, 46:24-47:1, 47:22-46:6 (We do produce the broker manual to the brokers purely, simply, because that is to provide guidance to the broker as to the way we operate.· That tells them the issue with surveys, but also how to bind a risk, what the binding procedures are, what a temporary binder is as opposed to a policy document, what the timings are, what the flow charts are.· Everything to do with transacting business with us.").

37.     Within the Brokers Manual [formally referred to as Business Manuals for Concept Special Risk, Usher Depo, p. 48:22-24, and also provided to "wholesale broker" Burns & Wilcox, *id.* at p. 52:3-4, was a Zip file containing "the policy wordings, the application forms, the standard letter of compliance forms, all the forms that are referred to in the business manual." Usher Depo, p. 51:5-9.

38.     Mr. Usher confirmed again that "once a broker is approved, they are sent the business manual." *Id.* at p. 52:21-23.

39.     Statements by Mr. B.A. Usher illustrate the subjective nature of his underwriting "practices." Usher Depo, p. 66:4-25, 69:4-5,

40.     Mr. Usher testified that most of the Survey's "C recommendations" "are really cosmetic." Usher Depo 70:23-71:1.

41.     Mr. Usher testified that all communication goes through their wholesale broker, and never to the insured directly. Usher Depo, p. 88:4-11.

42.     Mr. Usher confirmed that Burns & Wilcox received the premium funds from Burns & Wilcox, Usher Depo, p. 83:2-84:23. In fact, according to the emails reviewed by Mr. Usher at his deposition, Burns & Wilcox delayed paying the premiums to GREAT LAKES, until well after GREAT LAKES refused to afford coverage. *See id.*

43.     Further, Mr. Usher explained that Concept Special Risks utilizes a computer program to calculate risks and premiums. Usher Depo p. 19:11-18.

44.     The subject loss was fortuitous and in no way connected to any pre-insurance survey or the re-submission of documents (i.e., a re-submitted hurricane plan). *See* Decl. Famulari.

45.     July 19, 2019, Crabtrees received a correspondence indicating that their fortuitous Vessel loss was denied, along with a copy of the Complaint filed against them in United Stated District Court for the District of Montana, in bad faith.

**Respectfully submitted this 15th day of December 2021**,

**PERRY & NEBLETT, P.A.**
2550 South Bayshore Drive, Suite 211
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile:  (305) 967-8182
david@perryneblett.com
jmahaffey@perryneblett.com
terry@perryneblett.com

By:  /s/ *David Avellar Neblett*
DAVID AVELLAR NEBLETT, ESQ, B.C.S.
Florida Bar No.: 526371

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of December 2021, I electronically filed this Statement with the Clerk of the Court using CM/ECF, I also certify that the foregoing Response in Opposition is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

**PERRY & NEBLETT, P.A.**
2550 South Bayshore Drive Suite 211
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile: (305) 856-8409
david@perryneblett.com
jmahaffey@perryneblett.com
terry@perryneblett.com

By:  /s/ *David Avellar Neblett*
DAVID AVELLAR NEBLETT, ESQ., B.C.S.
FL. Bar No.:  526371
JAMES M. MAHAFFEY III, ESQ.
FL. Bar No.:  105353

## SERVICE LIST

| **Goldman & Hellman** | **Perry & Neblett, P.A.** |
|---|---|
| Steven Goldman, Esq. | David Avellar Neblett, Esq. |
| Jacqueline Goldman, Esq. | James M. Mahaffey III, Esq. |
| 8751 West Broward Blvd., Suite 404 | 2550 South Bayshore Drive, Suite 11 |
| Fort Lauderdale, FL  33324 | Miami, FL 33133 |
| Steven@GoldmanAndHellman.com | david@perrynebelt.com |
| Telephone: (954) 356-0460 | jmahaffey@perryneblett.com |
| Facsimile: (954) 832-0878 | terry@perryneblett.com |
| *Attorneys for Plaintiff/Counter-Defendant* | jack@perryneblett.com |
| | thomas@perryneblett.com |
| | service@perryneblett.com - *For Filing Only* |
| | Telephone: (305) 856-8408 |
| | Facsimile: (305) 967-8182 |
| | *Attorneys for Defendants/Counter-Plaintiffs* |
| | *Bryan Crabtree and Bethea Crabtree* |

By: /s/ *David Avellar Neblett*
 DAVID AVELLAR NEBLETT, ESQ., B.C.S.
 FL. Bar No.:  526371
 JAMES M. MAHAFFEY III, ESQ.
 FL. Bar No.:  105353