11699

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(WEST PALM BEACH)

CASE NO.: 9:20-cv-81544-ALTMAN/Reinhart

GREAT LAKES INSURANCE SE,

        Plaintiff/Counter-Defendant,

v.

BRYAN CRABTREE and BETHEA
CRABTREE,

        Defendants/Counter-Plaintiffs.

                                    /

## DECLARATION OF BRYAN CRABTREE IN OPPOSITION TO GREAT LAKES' MOTION FOR SUMMARY JUDGMENT

I am over 18 years of age. I make the following sworn Declaration based upon personal information, knowledge, and belief. I have personal knowledge of all matters set forth in this Declaration. Pursuant to 28 U.S.C. § 1746, Bryan Crabtree declares, and states as follows:

1.     That I am extremely upset with the handling of my claim and loss by GREAT LAKES INSURANCE SE ("GREAT LAKES") and Concept Special Risks.

2.     That I was led to believe that there were no issues and that my loss was covered.

3.     That I have reviewed the declarations submitted by Beric Anthony Usher (DE 117-1), Ian Allen (DE 117-4), Roy Cramer (DE 117-5), Alan Ridenour (DE 117-6) and that I disagree with the statements contained therein.

4.     That BETHEA CRABTREE and I had recently purchased and contemporaneously procured coverage for the (S/V "BRANDISON," a 2000 43 ft Privilege vessel with Volvo twin 39 hp diesel engines) (the "Vessel"), only days before she was severely damaged when an adjacent vessel caught fire while at the Cracker Boy Boat Works, Inc. boatyard.

5.     That my family and I selected the Cracker Boy Boat Works, Inc. boatyard, located in Riviera Beach, Florida, to commence retrofit and repairs upon the Vessel prior to her maiden voyage.

6.     That the Vessel was "on the hard" and removed from navigable waters at the time of the loss.

7.     That we purchased and procured an "agreed value," "all-risks" insurance policy on their newly purchased Vessel, issued by GREAT LAKES, valid from April 23, 2019, until April 23, 2020.

8.     That GREAT LAKES via its underwriter, Concept Special Risks, issued insurance on or about April 23, 2019.

9.     The subject binder/policy provides an agreed value coverage of $250,000.00 in Hull coverage, $25,000.00 in Personal Property coverage, as well as additional coverages.

10.     That the documents/information that GREAT LAKES contended were outstanding were already submitted and in the possession of Burns & Wilcox, GREAT LAKES' agent.

11.     That on the morning of May 7, 2019, approximately fifteen (15) days after procuring insurance upon the Vessel, an adjacent yacht fire occurred at the boatyard and the S/V BRANDISON sustained serious damage (heat, smoke, water, etc.) due to the fire.

12.     That I had only recently purchased the Vessel, weeks prior to the loss.

13.     That I never had a chance to enjoy the Vessel with my family.

14.     That I immediately and timely reported the loss.

15.     That the subject loss was "fortuitous" and due to no fault of myself of my family.

16.     That the subject loss is in no way connected to the application for insurance.

17.     That the subject loss is in no way connected to the "Letter of Compliance" ("LOC").

2

18. That the subject loss occurred during the active binder/policy period.

19. That I have no agency relationship with Burns & Wilcox.

20. That I have never directly communicated directly with Burns & Wilcox.

21. That I am not a party to the "Concept Special Risks Limited – US Operating Instructions" ("Operating Agreement") between Concept Special Risks and Burns & Wilcox, nor did I consent to any agency relationship between myself and Burns & Wilcox.

22. That Burns & Wilcox does not have the ability or authority to act on the behalf of myself or my family.

23. That Burns & Wilcox is an agent of GREAT LAKES.

24. That based upon the actions of Burns & Wilcox on the behalf of GREAT LAKES, I believed and continue to believe that Burns & Wilcox is an agent of GREAT LAKES.

25. That Burns & Wilcox is listed upon Concept Special Risks' website.

26. That I understand that Burns & Wilcox received and held on to the premiums I paid to GREAT LAKES for insurance.

27. That I worked with Mr. Sam Schirmer of Schirmer Insurance Group, LLC, who communicated with GREAT LAKES' agent, Burns & Wilcox.

28. That it is my understanding that the "Stetler Survey" had been submitted to GREAT LAKES' agent, Burns & Wilcox, on several occasions.

29. That I did not make any "misrepresentation" on the Letter of Compliance ("LOC").

30. That Concept Special Risks decided it had enough information to issue an insurance "binder" which was operational and provided coverage on the date of the loss.

31. That Sam Schirmer timely provided GREAT LAKES' agent, Burns & Wilcox, all the information that GREAT LAKES contends was not provided.

3

32. That upon review, the binder/policy indicated that the LOC was not accepted.

33. That I was confused and initially objected to resubmitting documents that were already within the insurance company's possession.

34. That I did resubmit documents and information upon request.

35. That the resubmission of a "hurricane plan" had nothing to do with the subject loss.

36. That upon review, Concept Special Risks sought documents it claimed it did not possess after May 24, 2019.

37. That my Vessel was in the boat yard undergoing all necessary repairs to comply with the Stetler Survey.

38. That upon review, on or about June 7, 2019, GREAT LAKES/Concept Special Risks received the documents it believed to be outstanding from its agent, Burns & Wilcox.

39. That upon review, GREAT LAKES has not presented competent evidence to show that "numerous recommendations in the Stetler Survey had not been completed, including all recommendations relating to the Vessel's fire extinguishers," and I disagree.

40. That I disagree with the incorrect argument that "numerous recommendations in the Stetler Survey had not been completed."

41. That I purchased fire extinguishers that comply with USCG regulations.

42. That Mr. Ian Allen was the initial adjuster on the behalf of Arnold & Arnold.

43. That Mr. Ian Allen adjusted the loss as if same was covered and informed that there were not issues.

44. That I believe Ian Allen sent emails that reassured me that my loss would be covered.

45. That Ian Allen requested that I resubmit documents, including after May 27, 2019.

4

46.     That I believe Ian Allen was "taken off the file" and replaced by another adjuster, in order for Arnold and Arnold to provide the insurance company an opinion it sought.

47.     That I traveled to Florida after the loss, and removed, secured, and stored certain items that were previously on the Vessel.

48.     That I informed the insurance company of the costs associated with storage.

49.     That I paid to store several items of personal property, which were removed immediately after the subject loss.

50.     That it would be impossible or futile for an "adjuster" or "surveyor" to review photographs to determine what items remained on the Vessel or what items were removed from the Vessel after the loss.

51.     That it is my understanding that the insurance company or its representatives never conducted an inspection with "survey compliance" in mind.

52.     That Alan Ridenour's opinion that certain items had not been complied with was incorrect.

53.     That I provided several instances of proof to contradict and controvert the opinion of Alan Ridenour, including that I purchased safety items and other items (i.e., oil discharge placard).

54.     That batteries were disconnected and removed after the loss.

55.     That life preservers and other safety equipment were removed from the Vessel after the loss.

56.     That I fixed/repaired or was in the process of fixing/repairing items within the Stetler Survey.

57.     That I spent tens of thousands of dollars on work to the Vessel.

5

58. That I disagree with the contentions contained within Mr. Ridenour's declaration.

59. That I disagree with the contentions in Mr. Allen's declaration and those contentions are inconsistent with his prior statements.

60. That I disagree with the contentions contained within Mr. Usher's declaration.

61. That my Vessel was in the process of undergoing all of the repairs necessary to bring the recently purchased Vessel above any and all minimum standards, before the subject loss cut the repair efforts short.

62. That I do not have receipts for each item or instance of repair done to my Vessel.

63. That I did not make any material misrepresentations.

64. That GREAT LAKES' position that it would not have issued coverage due to various reasons is self-serving and incorrect.

65. That GREAT LAKES should not be permitted to rely upon documents it rejected or contends it was not in possession of, in its attempt to avoid coverage.

66. That myself and my family wish to be made whole for our loss.

67. That myself and my family have suffered extreme hardship due to GREAT LAKES' bad faith refusal to indemnify us for the loss.

68. That GREAT LAKES' is attempting to create a situation of impossibility, in an attempt to act as GREAT LAKES did not issue insurance for my Vessel.

69. That the items GREAT LAKES contends were outstanding had nothing to do with the loss and nothing to do with GREAT LAKES' offer of insurance as requested.

FURTHER DECLARANT SAYETH NOT

6

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of December 2021.

**BRYAN CRABTREE**