Case 9:20-cv-81544-RKA   Document 126   Entered on FLSD Docket 12/15/2021   Page 1 of 23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(WEST PALM BEACH)**

**CASE NO.: 9:20-cv-81544-ALTMAN/Reinhart**

GREAT LAKES INSURANCE SE,

      Plaintiff/Counter-Defendant,

v.

BRYAN CRABTREE and BETHEA
CRABTREE,

      Defendants/Counter-Plaintiffs.

_____/

## <u>DEFENDANTS, THE CRABTREES', RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [D.E. 118]</u>

Defendants/Counter-Plaintiffs, BRYAN CRABTREE and BETHEA CRABTREE, by and

through the undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure

and Rules 7.1 and 56.1 of the Local Rules for the Southern District of Florida, hereby file this

Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment

[D.E. 118], and respectfully request that summary judgment be granted in favor of nonmovants, the

Crabtrees, in accordance with Rule 56(f)(1), and in support thereof state as follows:

### <u>SUMMARY OF THE CASE</u>

The action *sub judice* involves a foreign insurer, GREAT LAKES INSURANCE SE's

("GREAT LAKES"), refusal to indemnify its insureds, BRYAN CRABTREE and BETHEA

CRABTREE ("the Crabtrees") after the Crabtrees' insured Vessel (the S/V BRANDISON) was

severely damaged when an adjacent vessel caught fire at a boat yard which resulted in the total loss

to the Crabtree' Vessel. *See Statement of Material Facts*, at D.E. 125.

The Crabtrees had recently purchased the S/V BRANDISON, and contemporaneously

procured insurance for the Vessel about fifteen (15) days before the subject loss, as any prudent boatowner would. *Id*. It is undisputed that the Crabtrees purchased an agreed value insurance coverage on their newly purchased Vessel, issued by GREAT LAKES, valid from April 23, 2019, until April 23, 2020. The subject policy provides an agreed value coverage of $250,000.00 in Hull coverage, $25,000.00 in Personal Property coverage, as well as additional coverages. *See* Binder/Policy, of record at D.E. 1-1; *see also id*. Coverage was bound on or about April 23, 2019. *Id*.

Unfortunately, the Vessel would never reach her maiden voyage with the Crabtrees. On the morning on May 7, 2019, the vessel situated immediately adjacent to the S/V BRANDISON (the M/Y "SEA ALICE") caught fire and severely damaged the Crabtrees' Vessel resulting in the total loss of the Vessel. *Id*. At the time of the loss, the Crabtrees' newly-purchased Vessel was situated "on the hard" undergoing retrofits and repairs.



*Photograph of the S/V BRANDISON adjacent to the M/Y SEA ALICE, produced as "Defs 2403."*

GREAT LAKES can point to no wrongdoing by the Crabtrees, as their loss was a "text-book" fortuitous loss that occurred during the active binder/policy period. *Id*. Rather than rightfully indemnifying its insureds in accordance with the binder/policy and possibly initiating a subrogation action against the offending vessel, GREAT LAKES denied the claim and

contemporaneously brought suit before the United States District Court for the District of Montana, falsely claiming that the Crabtrees were residents of Montana. *Id*. The first time that the Crabtrees became aware of the lawsuit filed against them by their insurer, and that the insurer was taking issue with their fortuitous Vessel loss, was via the denial letter dated July 19, 2019, enclosing the Complaint filed against them as a matter of "courtesy." *Id.*

Despite these undisputed facts, GREAT LAKES has continued to refuse to pay any amounts for the damages sustained but has instead concocted unsubstantiated and inapplicable theories to avoid liability. GREAT LAKES has done everything possible to avoid paying for this covered loss. In its most recent efforts to avoid paying for this covered loss, GREAT LAKES has filed a Motion for Summary Judgment [D.E. 118], that seeks to deprive the Crabtrees their day in Court.[1] There are numerous material facts in dispute which must be left for the trier of fact to determine.

The "facts" relied upon in support of GREAT LAKES' Motion for Summary are clearly controverted by the record evidence and testimony and/or are inadmissible and improperly before this Honorable Court. The record evidence, depositions, and sworn Declarations before this Honorable Court clearly establish that numerous material "facts" are still in dispute, inaccurate, inadmissible, and/or squarely contested, rendering GREAT LAKES' request for summary judgment untenable. The Plaintiff has not and cannot establish that its theories it relies upon to support its denial of coverage are supported or applicable as a matter of law.

GREAT LAKES' Motion for Summary Judgment [D.E. 118] must be denied, and instead, summary judgment should be entered in favor of the Crabtrees, thereby resolving the instant coverage dispute. *See* Fed. R. Civ. P. 56.

---

[1] GREAT LAKES previously filed a Motion for Judgment on the Pleadings, D.E. 64, which the Crabtrees strenuously opposed, D.E. 70.

<u>**MEMORANDUM OF LAW**</u>

**I.    GREAT LAKES HAS FAILED TO CARRY ITS BURDEN ON SUMMARY JUDGMENT AND SUMMARY JUDGMENT SHOULD INSTEAD BE ENTERED IN FAVOR OF THE NONMOVANT CRABTREES**

**A.    Summary Judgment Standard**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). "The moving party bears 'the initial responsibility of informing the ... [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 317, 323 (1986)). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). Once the initial burden is met, the non-moving party must go beyond the pleadings and come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When deciding if the moving party has met this burden of proof, the court must view all evidence in a light most favorable to the nonmoving party and any doubts must be resolved in the nonmoving party's favor. *Livernois v. Med. Disposables, Inc.*, 837 F.2d 1018, 1022 (11th Cir. 1988); Magluta v. Wetzel, 2006 U.S. Dist. LEXIS 94617, at *16 (S.D. Fla. Dec. 29, 2006) ("The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant."). A court must view all pleadings, depositions, and all other evidence in the

record in a light most favorable to the nonmoving party to determine whether an absence of genuine dispute actually exists because a motion for summary judgment deprives the nonmoving party of its day in court. *Benitez v. Synthes, Inc.,* 199 F. Supp. 2d 1339, 1343 (M.D. Fla. 2002).

> **B.      GREAT LAKES' "Material Facts" are in Dispute and/or Inadmissible, Precluding Summary Judgment in its Favor**

As set forth above, summary judgment is only appropriate if there are no genuine issues as to *any* material fact. In the instant action, there are numerous issues and disputes of material fact which preclude the entry of summary judgment. *See Statement of Material Facts*. GREAT LAKES has failed to show that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." *See Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004).

The Crabtrees have refuted "facts" relied upon by GREAT LAKES. Contemporaneously with the filing of the instant Response in Opposition, the Crabtrees have filed their *Statement of Material Facts in Opposition to Plaintiff's Statement, and Statement of Additional Facts*, which clearly contest the purported "facts" which form the basis of GREAT LAKES' Motion. The Crabtrees steadfastly disagree with the majority of the GREAT LAKES purported "facts" and have provided this Court with evidence to dispute the positions asserted.

The Crabtrees have cited to the Sworn Declaration of Mr. F. David Famulari, Esq., B.C.S.— a Board Certified Admiralty and Maritime specialist with significant industry experience. Mr. Famulari, Esq., B.C.S. is the Crabtrees' retained expert and has been associated with the marine insurance industry for over forty (40) years. Mr. Famulari, Esq., B.C.S.'s Sworn Declaration unequivocally dispels the majority of GREAT LAKES' positions regarding its theories in opposition to coverage. Mr. Famulari, Esq., B.C.S.'s opinions and expertise confirm numerous questions of material fact as to the facts and theories relied upon by GREAT LAKES. *See e.g.,*

5

*Martin v. Royal Caribbean Cruises, Ltd.*, 216 F. Supp. 3d 1347, 1365 (S.D. Fla. 2016) (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) ("this type of battle of the experts is precisely the type of battle which must be reserved for trial (but not a summary judgment).").

Defendant, BRYAN CRABTREE ("Mr. Crabtree"), has also filed his Sworn Declaration which directly refutes numerous purported "facts" asserted by GREAT LAKES. Mr. Crabtree's Sworn Declaration specifically addresses and controverts GREAT LAKES' Statement of Fact [D.E. 117] and explains why GREAT LAKES' "facts" are disputed, inaccurate, and/or misplaced. Mr. Crabtree's Sworn Declaration also specifically addresses and corrects the improper and inaccurate assertions by GREAT LAKES, including those related to agency, compliance, Plaintiff's bad-faith adjustment of his loss, demands regarding resubmission of certain documents, statements/waivers made by adjusters/Concept Special Risks, and post-loss activities related to his damaged Vessel. *See Statement of Material Facts*.

These sworn Declarations, combined with the evidence submitted by the Crabtrees, leave no doubt that there are numerous questions of fact which must be determined by the trier of fact. Not only are many of the GREAT LAKES' "material facts" contested and/or false, but many are also based on improper and/or inadmissible evidence which the Crabtrees strenuously object to. *See, e.g., Acafrao v. U.S. Century Bank*, 2010 WL 4261435 at *2-3 (S.D. Fla. 2010); *see also* Fed. R. Civ. P. 56(c)(2) (a party has the right to object to a fact which is not supported by admissible evidence). That alone should preclude the entry of summary judgment.

GREAT LAKES' Motion must also be denied because GREAT LAKES has not met its burden of proving that its two (2) concocted coverage excuses/defenses are legally applicable in the instant case.

### C.      Response to GREAT LAKES' Choice-of-law Arguments

As an initial matter, the Crabtrees direct the Court to, and incorporate by reference, the Crabtrees' *Response in Opposition to Plaintiff's Motion for Judgment on the Pleadings*, which thoroughly analyzes and asserts the Crabtrees' position regarding the applicable choice-of-law principles in this matter. *See* Defs.' Resp., D.E. 70. In the Crabtrees' above-reference Response, *see id.*, the Crabtrees briefed the purported "choice of law provision" in great detail. The Crabtrees again assert that Federal Admiralty law does not wholly apply here, in light of the binding principles of *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 316 (1955), and in light of the fact that GREAT LAKES has refused to provide a certified copy of the subject binder/policy upon request,[2] *inter alia*. "The Supreme Court held in *Wilburn Boat Co.* that in the absence of a controlling rule of federal maritime law, the interpretation or construction of a marine insurance contract is to be determined according to state law," *Lamadrid*, 567 F. App'x at 699, here, Florida law.

The Crabtrees further note that GREAT LAKES asserts a contradictory position regarding its preferred choice-of-law. GREAT LAKES attempts to argue that the "policy" of insurance is "void *ab initio*"—that no policy exists. Contradictorily, GREAT LAKES relies upon the "policy" of insurance, the same insurance "policy" it claims is invalid and void *ab initio*, to attempt establish GREAT LAKES' preferred choice of law. *See* Pl.'s Compl., D.E. 1-1, ¶¶ 22, 32, 42.

*Arguendo*, the Crabtrees herein provide some analysis consistent with New York state law, only as it pertains to disputes arising under the contract, in an abundance of caution and without

---

[2] Plaintiff has already waived the right to assert certain contractual obligations as defenses by virtue of its failure to provide a certified copy of the subject policy within thirty (30) days of Defendants' request for same. *See* § 627.4137(1)(e), Florida Statutes; *see also United Auto. Ins. Co. v. Rousseau*, 682 So. 2d 1229, 1229 (Fla. 4d DCA 1996); *Figueroa v. U.S. Sec. Ins. Co.*, 664 So.2d 1130 (Fla. 3d DCA 1995); *Porcelli v. OneBeacon Ins. Co.*, 635 F. Supp. 2d 1312, 1319 (M.D. Fla. 2008).

waiver of the arguments asserted against the application of same. *See* Defs.' Resp., D.E. 70; *Great Lakes Ins. SE v. Boat Rental Miami, Inc.*, 2020 U.S. Dist. LEXIS 8300, *9 (S.D. Fla. 2020) (Altonaga, J.) (finding that the exact same choice of law provision does not apply to disputes that are outside of the contract or contract interpretation, and thus Florida law applied).

      **D.**        **Response to GREAT LAKES Unsupported Contention that Coverage is "Void" due to Purported "Failure to Comply"**

GREAT LAKES' first concocted coverage defense is a misplaced argument that coverage is "void" due to the Crabtrees' "failure to comply." Plaintiff's position fails to persuade.

As an initial matter, GREAT LAKES concedes that Federal Admiralty law does not apply, as GREAT LAKES fails to identify any "controlling rule of federal maritime law." *See Wilburn Boat*, 348 U.S. at 316. Rather, GREAT LAKES begins with a discussion/argument regarding conditions precedent as defined by New York law. GREAT LAKES incorrectly claims that the Crabtrees did not comply with a request to provide documentation, without addressing the fact that the subject loss occurred within the binder/policy period, days after coverage was bound, while the Vessel was getting retrofit work done at the boat yard. *Statement of Material Facts*.

GREAT LAKES also attempts to rely upon a distinguishable, inapposite, and inapplicable case involving Concept Special Risks, Ltd. (formerly known as "TL Dallas"), *Cortes Molina v. TL Dallas (Special Risks) Ltd.*, 547 F. Supp. 2d 102, 111 (D.P.R. 2008). Completely dissimilar to the instant action, the *Cortes Molina* opinion involved a situation where the nonmovant insured failed to submit any opposition to the movant's statement of material facts. *See id.* at 103 ("There being no opposition from Plaintiffs, the Court will treat Defendants' Statement of Uncontested Material Facts (Docket No. 22), as admitted and use them as basis for the disposition of the motion for summary judgment."). The *Cortes Molina* court also dealt with issues of seaworthiness and timely notice, again, completely dissimilar to the instant action. *Id.*

### i.   *"Binders" of Insurance*

New York law treats "binders" of insurance as binding contracts that provide coverage. "Under established New York law, an insurance binder provides for interim insurance until the parties set or refuse a final policy. When a loss occurs prior to issuance of a final policy, **the binder in effect at the time of the loss governs**. *Id.* at 120 (citing *World Trade Ctr. Props.*, 345 F.3d 154, 183 (2d Cir. 2003))." *In re September 11th Liab. Ins. Coverage Cases*, 458 F. Supp. 2d 104, 115 (S.D.N.Y. 2006) (emphasis added). The fact that Plaintiff, GREAT LAKES, attempts to claim that a "full" insurance policy has not been issued, or that GREAT LAKES contends that it was not in receipt of certain documents (which is disputed), is of no consequence as the "binder/policy" was the controlling agreement. Further explained,

> [b]ecause binders are, by definition, not full documents sufficiently complete to create binding agreements, courts must often look beyond the plain terms of the binder to discern the precise scope of the liabilities and obligations under the insurance plan in the event that a loss occurs prior to issuance of the final policy. *Id.* To ensure that the binder comports with the intent of the parties, courts will consider: "(1) the specific terms contained in the binder or incorporated by reference, and (2) to the extent necessary as gap-fillers, the terms included in the usual policy currently in use by the insurance company or those required by statute." *World Trade Ctr. Props.*, 345 F.3d at 169 (citing *La Penta v. General Accident Fire & Life Assurance Corp.*, 62 A.D.2d 1145, 404 N.Y.S.2d 182, 184 (4th Dep't 1978)); *see also Liab. Ins. Coverage Cases*, 333 F. Supp. 2d at 120. Outside of the specific terms included in the binder and the standards established by the insurance industry or by statute, courts will also look to "the parties' negotiations to determine what terms the parties intended to incorporate in the binder." *Liab. Ins. Coverage Cases*, 333 F. Supp. 2d at 120 (citing *World Trade Ctr. Props.*, 345 F.3d at 169). The objective expectations of the parties is what counts--what they told each other, and not what each side may have discussed among themselves or subjectively wished to accomplish. *See Korea Life Ins. Co. v. Morgan Guar. Trust Co. of New York*, 269 F. Supp. 2d 424 (S.D.N.Y. 2003).

*Id.* Courts have confirmed that binders of insurance provide coverage, even if a subsequent policy is never issued, in line with the general principles outlined in 12A J.A. Appleman & J. Appleman, Insurance Law and Practice § 7232 (1981). Courts agree that a binder is intended to give temporary protection pending the investigation of the risk by the insurer or until issuance of a formal policy.

9

*See Sawyer v. Citizens & S. Nat'l Bank*, 164 Ga. App. 177, 181, 296 S.E.2d 134, 138 (1982) ("The binder is an independent contract, separate and distinct from the permanent policy which may be issued on the basis of the written application."). It cannot be disputed that an operative binder of insurance was in place at the time of the subject loss, providing the Crabtrees' coverage for their loss. *Statement of Material Facts*.

### ii.    *GREAT LAKES' Unsupported "Condition Precedent" Argument*

GREAT LAKES also contends that its request for the resubmission of documents was either a condition precedent or warranty. Under New York law, "[a] condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Edelman Arts, Inc. v. Art Int'l (UK) Ltd.*, 841 F. Supp. 2d 810, 823 (S.D.N.Y. 2012) (citing *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 660 N.E.2d 415, 418, 636 N.Y.S.2d 734 (N.Y. 1995)). "However, not every condition in a contract is precedent to the existence of a valid, enforceable contract." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 704 (S.D.N.Y. 2001) (citing *Matco Elec. Co., Inc. v. American District Telegraph Co., Inc.*, 156 A.D.2d 840, 841, 549 N.Y.S.2d 843, 844 (3d Dep't 1989)).

Notably, in the subject binder/policy, there is a section specifically titled "**9. General Conditions & Warranties**." *See* D.E. 1-1, p. 12-15 of 16. The provision in question is not contained within this Section 9, and GREAT LAKES has not argued that any of the provisions within the section titled "**9. General Conditions & Warranties**," were not adhered to by the Crabtrees. On the face of the contract, the provision in question is not a condition precedent to the issuance of a binder/policy. *See id.*

Additionally, "a party to a contract 'cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition.'" *A.H.A. Gen. Constr. v. N.Y.C. Hous. Auth.*, 92 N.Y.2d 20, 31, 677 N.Y.S.2d 9, 15, 699 N.E.2d 368, 374 (1998). Here, the record reflects that the documents that GREAT LAKES contends were not "timely submitted" had already been provided to GREAT LAKES' agent, Burns & Wilcox. *Statement of Material Facts*. To impute GREAT LAKES' agent's failure or refusal to provide GREAT LAKES with certain documents it desired upon the Crabtrees, would be unjust and improper under the law. *Arguendo*, if the Court finds that the subject policy language created a condition, the record reflects that it was GREAT LAKES and/or its representatives/agents that frustrated or prevented the occurrence of the purported condition. *Id*. As noted, the Crabtrees had no direct communication with the foreign insurer [GREAT LAKES] or the underwriters [Concept Special Risks]. *Id*. The Crabtrees could do nothing other than submit documents to Burns & Wilcox, GREAT LAKES' agent. *Id*.

Nevertheless, the resubmission of documents already within Burns & Wilcox's possession was not a condition precedent to the coverage provided under the operative policy/binder. If anything, GREAT LAKES may attempt to contend that the resubmission of documents was a condition to issuing the "full policy," which became unnecessary upon the Crabtrees' Vessel loss within the binder/policy period. *Id*. Viewed in the light most favorable to the Crabtrees, the actions and/or inactions of GREAT LAKES and its representatives demonstrate that the resubmission of documents already in the possession of GREAT LAKES' agent, Burns & Wilcox, was not an enforceable condition to coverage under the policy/binder of insurance. Plaintiff's argument fails.

     **iii.**      *Waiver*

11

Conditions may be waived, either explicitly or implicitly by conduct. *See PB Ams. Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 2010 WL 532306, at *6 (S.D.N.Y. 2010); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp.2d 383, 389 (S.D.N.Y. 1999). New York law notes that "[t]he nonoccurrence of the condition may yet be excused by waiver, breach or forfeiture. The Restatement posits that '[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange' (Restatement [Second] of Contracts § 229)." *Oppenheimer & Co. v. Oppenheim*, 86 N.Y.2d 685, 691, 636 N.Y.S.2d 734, 737, 660 N.E.2d 415, 418 (1995). Further, adjusters and representatives of GREAT LAKES provided Mr. Crabtree with assurances that the loss was covered and that there were no issues. *Statement of Material Facts*.

It is well established that although a party may waive a provision included in a contract for that party's sole benefit, a party cannot waive a contractual requirement that benefits both sides to the transaction. *See Citadel Equity Fund, Ltd. v. Aquila, Inc.*, 371 F. Supp. 2d 510, 520 (S.D.N.Y. 2005); *see also* Williston on Contracts § 39:24 (4th ed.). It is undisputed that the provision in question is solely for the benefit of GREAT LAKES. *See* D.E. 1-2.

GREAT LAKES' own motion confirms that "Underwriters" [Concept Special Risks] received the documents it sought to be resubmitted on or about June 7, 2019, which were in the possession of GREAT LAKES' agent, Burns & Wilcox. Pl.'s Mot., D.E. 118, p. 8 of 13. What GREAT LAKES fails to mention is that the documents were undeniably requested after May 24, 2019, the date GREAT LAKES claimed they needed the documents before, by individuals associated with Concept Special Risks and individuals associated with Arnold & Arnold. *Statement of Material Facts*. Meanwhile, the documents were in the possession of GREAT

12

LAKES' agent, Burns & Wilcox, the entire time. GREAT LAKES and its representative's actions unequivocally show that it waived the provision in question, a provision that provided benefit only to GREAT LAKES. *Id.*

The Crabtrees maintain that coverage was operative on the date of the loss, and that the provisions of the binder/policy relied upon by GREAT LAKES are not conditions precedent to coverage under the binder/policy. *Id.* At a bare minimum, questions of fact remain as to this issue, precluding the grant of summary judgment in GREAT LAKES' favor. *See id.*

### iv.   *Substantial Compliance*

Additionally or alternatively, the Crabtrees assert that they fully or substantially complied with the provision in question. *Statement of Material Facts*. Florida and New York law recognize the principles of "substantial compliance." *See Haiman v. Fed. Ins. Co.*, 798 So.2d 811 (Fla. 4th DCA 2001); *El Dorado Towers Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 717 F. Supp. 2d 1311, 1319 (S.D. Fla. 2010); *Sunshine State Ins. Co. v. Corridori*, 28 So. 3d 129, 131 (Fla. 3d DCA 2010); *Restaurant Creative Concepts Mgt., LLC v. Northeast Rest. Dev., LLC*, 83 AD3d at 1191.

Here, the record confirms that all the documents/information were received by GREAT LAKES, and that the Crabtrees fully complied or substantially complied via the submission (and resubmission) of all documents/information sought. *Statement of Material Facts*. At a minimum, questions of fact remain as to this issue.

### v.   *GREAT LAKES' Alternate "Express Warranty" Argument*

GREAT LAKES argues, in the alternative, that certain provisions within the binder/policy are or may be an "express warranty." *See* Pl.'s Mot, D.E. 118, p. 8 of 13. GREAT LAKES points to a distinguishable case, where the court found that the insured breached a provision in the binder/policy titled "General Conditions and Warranties." GREAT LAKES did not identify a provision as an express warranty and cannot now claim that it is so. Plaintiff's argument fails.

**E.      Burns & Wilcox are the Agents of GREAT LAKES and/or Concept Special Risks and are Responsible for GREAT LAKES' Ability to Operate in the United States**

As this issue of "agency" is a dispute that does not arise under the contract of insurance, the Crabtrees assert that Florida law applies. *See* Defs.' Resp., D.E. 70; *Great Lakes Ins. SE v. Boat Rental Miami, Inc.*, 2020 U.S. Dist. LEXIS 8300, *9 (S.D. Fla. 2020) (Altonaga, J.) (finding that the exact same choice of law provision does not apply to disputes that are outside of the contract or contract interpretation, and thus Florida law applied).

The question as to whether someone is an "agent" is a question of fact. *Naviera Neptuno S.A. v. All Int'l Freight Forwarders, Inc.*, 709 F.2d 663, 665 (11th Cir. 1983). Under Florida law,[3] the question of agency is an issue of fact and the burden is on the plaintiff to establish a *prima facie* case of its existence. *Product Promotions Inc. v. Cousteau*, 495 F.2d 483, 492 (5th Cir. 1974). "The existence of an agency relationship is determined by the trier of fact where its resolution depends on inferences to be drawn from the facts adduced. *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1522 (11th Cir. 1985). All relevant facts and circumstances may properly be considered." *John Scott, Inc. v. Munford, Inc.*, 670 F. Supp. 344, 345 (S.D. Fla. 1987); *Amerven, Inc. v. Abbadie*, 238 So. 2d 321, 322 (Fla. 3d DCA 1970) ("The general rule is that, unless the evidence is susceptible to but one interpretation (which is not the situation at bar) the question of whether an agency relationship exists is for the jury to determine.").

### i.   *Florida Agency Principles as to "Wholesale Brokers"*

In the instant case, Burns & Wilcox, GREAT LAKES' "wholesale broker" responsible for GREAT LAKES' ability to operate in the United States, is an agent of GREAT LAKES. The

---

[3] The question of agency is, again, governed by Florida law, as this issue arises outside of the subject contract of insurance. *See* Defs.' Resp., D.E. 70 (analyzing *Great Lakes Ins. SE v. Boat Rental Miami, Inc.*, 2020 U.S. Dist. LEXIS 8300, *9 (S.D. Fla. 2020) (Altonaga, J.)).

Florida Supreme Court case *Almerico v. RLI Ins. Co.*, 716 So. 2d 774, 781 (Fla. 1998) (citing to Fla.Stat.Ann. § 626.746(3); *Russell v. Eckert*, 195 So. 2d 617 (Fla. App.1967)), indicates that when an insurance company furnishes certain documents, including application forms, and then accepts business from the broker, the broker is an agent of the insurer. As noted above, agency is an issue of fact that is generally reserved for the jury. *See id.*

These same principles were more recently applied in this Southern District of Florida, in the case *Amaro v. Certain Underwriters at Lloyd's London*, No. 18-23503-Civ-SCOLA/TORRES, 2019 U.S. Dist. LEXIS 128753, at *13 (S.D. Fla. July 31, 2019) (collecting cases). As explained by the *Amaro* court, "the [Florida Supreme] Court warned insurance companies 'that if they provide unaffiliated agents with certain insurance business materials that identify the agents with the company and then accept business from them, they will be held responsible to the insured just as if they had "lawfully and formally appointed the agent" as their own.'" *Id.* at *14 (citing *Guarente-Desantolo v. John Alden Life Ins. Co.*, 744 So. 2d 1123, 1125 (Fla. 4th DCA 1999) (quoting *Almerico*, 716 So. 2d at 782))).

In *Amaro*, the court found that the wholesale broker was an agent of the insurer, as it was established factually that the wholesale broker received premiums and commissions on the behalf of the insurance company, despite the lack of evidence that that the wholesale broker received materials and information. *Id.* at *16 ("Plaintiff's argument is well taken because — as Mr. Wine testified and the Court referenced above — there is evidence that R. Wine collected premium payments on Defendant's behalf and received a commission based on the amount of those premiums.").

As aptly concluded by the *Amaro* court and analogous to the instant case,

[i]ndeed, the Fourth District has explicitly stated that this is a pertinent factor to consider because it can lead an insured to believe that another has actual or apparent

15

authority as an insurer's agent. *See Guarente-Desantolo*, 744 So. 2d at 1126 ("In this case, appellant presented evidence that [the insurer] may have cloaked [the alleged agent] with sufficient indicia of agency," because the insurer "accepted appellant's insurance premium payments and paid [the alleged agent] a commission from the policies he sold."). This means that, although there is no evidence that Defendant provided R. Wine with insurance materials or an insurance booklet, there is enough evidence that the collection of premiums when coupled with the payment of a commission raise a genuine issue of material fact as to whether R. Wine was the agent of Plaintiff, Defendant, or both. *See, e.g., Zawilski v. Golden Rule Ins. Co.*, 2011 U.S. Dist. LEXIS 86084, 2011 WL 3359658, at \*4 (M.D. Fla. Aug. 4, 2011) ("An insurance broker is not exclusively employed by any specific company," and "[i]n some instances, a broker may serve in a dual capacity and act as an agent for the insurer.") (citations omitted). Because we cannot resolve this question on a motion for summary judgment, we have no choice but to conclude that Defendant's motion for partial summary judgment should be **DENIED**.

In the instant case several "special circumstances" exist. Here, GREAT LAKES/Concept Special Risks, provided its "wholesale broker," Burns & Wilcox, with application materials, information packs, etc. *Statement of Material Facts*. Burns & Wilcox, not only received the premiums on GREAT LAKES behalf, but held on the premiums for a significant period of time. *Id*. Additionally, there is further evidence of a contractual relationship and "Operating Agreement" between Burns & Wilcox and GREAT LAKES/Concept Special Risks, conclusively confirming that Burns & Wilcox was acting as an agent on the behalf of GREAT LAKES INSURANCE SE, *id*, or that a genuine issue of material fact exists as to Burns & Wilcox's agency relationship with GREAT LAKES.

### ii.  Arguendo, *New York Agency Principles*

GREAT LAKES attempts to rely upon "general rules" to continually posit that "surplus lines broker"[4] Burns & Wilcox, the entity that allows foreign insurer, GREAT LAKES, to operate

---

[4] Some confusion may exist in the term of art "broker" which is often used interchangeably with "insurance agent." Burns & Wilcox are not the Crabtrees' insurance agent. Rather, Burns & Wilcox are a "wholesale broker" or "surplus lines broker," which entered into a contractual agreement with Concept Special Risks, GREAT LAKES' agent/underwriter, allowing GREAT LAKES the ability to operate in the United States. "Agent" is often used to refer to an insurance agent, or in a more general sense, to an insurance broker as well. Conversely, "agent" is a term of art which denotes a legal status conferred via the law of agency. An "agency" relationship cannot be conferred upon another or disclaimed unilaterally by one party, as same is a legal nullity.

and issue policies in the United States, *Statement of Material Facts*, is the agent of the Crabtrees. This is untrue, and Plaintiff, GREAT LAKES, has failed its burden to prove the existence of an agency relationship. *See infra*.

New York law is similar to Florida law on this issue. For instance, an insurance broker can be held to be the legal agent of both the insurer and the insured, in certain factual circumstances, if there is "evidence of some act on the part of the insurance company or facts from which the authority to represent it may be inferred." *See, e.g.*, *Globe & Rutgers Fire Ins. Co. v. Lesher, Whitman & Co.*, 215 N.Y.S. 225, 227 (1926) (where the broker was found to be the legal agent of the insurer, despite a clause in the policy attempting to disclaim otherwise). The record before the Court is replete with examples of "special circumstances" in which the wholesale broker must be considered an agent of the insurer. *Statement of Material Facts*. At a bare minimum, questions of material fact remain as to this issue of agency.

F.       **Response to GREAT LAKES Unsupported "*Uberrimae Fidei*" Argument**

GREAT LAKES second connected coverage defense concerns the maritime insurance doctrine of *uberrimae fidei*, or "utmost good faith." Plaintiff's position, again, fails to persuade.

An analysis of the doctrine of *uberrimae fidei* involves an analysis into whether an insured has made a misrepresentation and if so, if the purported misrepresentation was "material to underwriting the risk." "Thus, in order for a court to find that a policy is void *ab initio*, a court must first find that a misrepresentation was made by the insured to the insurer, and that the misrepresentation was material to the underwriting of the risk." *AIG Centennial Ins. Co. v. O'Neill*, No. 09-60551-CIV-ZLOCH, 2013 U.S. Dist. LEXIS 189570, at *37 (S.D. Fla. May 9, 2013). "Materiality has been described by the Eleventh Circuit as 'that which could possibly influence

17

the mind of a prudent and intelligent insurer in determining whether he would accept the risk.'" *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942-43 (11th Cir. 1986). This district has declined to adopt a "bright-line" rule on the doctrine of *uberrimae fidei* and materiality, but instead, requires "a more fact-specific inquiry." *See AIG Centennial Ins. Co. v. O'Neill*, No. 09-60551-CIV-ZLOCH, 2013 U.S. Dist. LEXIS 189570, at *38 (S.D. Fla. May 9, 2013) (following the holding of *Great Lakes Reinsurance (UK) v. Roca*, 2009 U.S. Dist. LEXIS 133640, 2009 WL 200252, at *4 (S.D. Fla. Jan. 27, 2009), "in which that court declined to "follow a bright line rule adopted by the Ninth Circuit establishing every misrepresentation to a specifically inquired question on the application to be material as a matter of law.").

Genuine issues of fact on the materiality issue will preclude the entry of summary judgment. *See International Ship Repair and Marine Services, Inc. v. St. Paul Fire and Marine Ins. Co.*, 922 F. Supp. 577, 580 (M.D. Fla. 1996) (finding that material issues of fact precluded summary judgment on the issue of whether an insured complied with the disclosure requirements of *uberrimae fidei*). As well-explained by the *Roca* court upon resolution of [this same plaintiff's] motion for reconsideration:

> [i]f all Plaintiff can show at trial is that the insured's failure to disclose affected only the stated premium by 10%, the trier of fact may very well conclude that such a small difference in the premium was not truly material. The Eleventh Circuit's precedents applying the insured's duty to disclose do not rise and fall simply on a mathematical analysis of the premium charged to the insured. Rather, the Eleventh Circuit's cases focus on an insured's misrepresentation or non-disclosure and how that "could possibly influence the mind of a prudent and intelligent insurer in determining *whether he would accept the risk*, . . . ." *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942-43 (11th Cir. 1986) (emphasis added). Citing that same formulation of the test for materiality, the Eleventh Circuit in *HIH Marine Services* defined a material misrepresentation as one that "might have a bearing on the risk to be assumed by the insurer." *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1363 (11th Cir. 2000) (quoting *Northfield Ins. Co. v. Barlow*, 983 F. Supp. 1376, 1380 (N.D. Fla. 1997)).

6. It is thus the insurer's decision to accept the risk at all that predominantly bears on the question of materiality. That question will sometimes require the trier of fact to determine if in fact the alleged misrepresentation or nondisclosure would have affected the insurer's decision to accept the risk of providing coverage. That was the Eleventh Circuit's holding in *Kilpatrick*, where the Court's decision affirmed, following a trial, a jury's conclusion that undisputed non-disclosures were not material and, therefore, did not void the policy. 795 F.2d at 942-43.

*Great Lakes Reinsurance Uk Plc v. Roca*, No. 07-23322-CIV-MORE, 2009 U.S. Dist. LEXIS 151826, at *5-6 (S.D. Fla. Feb. 23, 2009). The cases cited or referenced by GREAT LAKES, that suggest the standard is "a higher premium" or some other standard, are incorrect and not in accordance with the binding precedent of this Eleventh Circuit.

As an initial matter, the Crabtrees wholly and completely reject and controvert the contention that their application of insurance or their letter of compliance contained a misrepresentation or nondisclosure. *Statement of Material Facts*. GREAT LAKES' sole argument is that the Crabtrees failed to indicate certain information on their letter of compliance with survey recommendations ("LOC"). However, GREAT LAKES fails to inform that it could not accept the LOC as it was purportedly not in possession of "the survey." *See* Binder/Policy, D.E. 1-2, p. 2 of 16 ("**The LOC cannot be accepted without the survey – please provide for review**."); *Statement of Material Facts* (emphasis added). It defies logic that GREAT LAKES' operable binder of insurance was issued in reliance upon a LOC that "**cannot be accepted**." *See id.* (emphasis added). This simple fact alone dismantles the Plaintiff's misplaced and unsupportable argument regarding materiality.

*Arguendo*, should the Court determine that the above argument is somehow tenable, despite GREAT LAKES' written representation that "**[t]he LOC cannot be accepted**," *id.* (emphasis added), GREAT LAKES' additional contentions are equally unconvincing. *To wit*, GREAT LAKES posits that its "[post-loss] investigation into the loss determined that in fact

19

numerous recommendations in the Stetler Survey had not been complied with, most notably, the recommendation to have the Vessel's fire extinguishers brought into compliac [sic] with USCG regulations." *See* Pl.'s Mot., D.E. 118, p. 10 of 13 (citing to SOMF, at ¶¶'s 27, 34 – which in turn cite to the controverted declarations of Mr. Usher and Mr. Ridenour). Mr. Ridenour the investigation photos of another, who did not investigate with survey compliance in mind. *Statement of Material Facts*. Further, the Declaration of Mr. Crabtree controverts GREAT LAKES' assertions and specifically informs that certain items were removed from the Vessel post-loss, making it practically impossible for the insurance company or its representatives to determine what had or had not been completed. *Id*. Mr. Crabtree controverts GREAT LAKES' assertions as to certain safety equipment, *id*, and Mr. Famulari, Esq., B.C.S. opines that same are completely irrelevant to the issues at hand. *Id*.

GREAT LAKES also attempts to utilize the initial adjuster/surveyor on the loss, Mr. Ian Allen,[5] to provide an unqualified analysis of the "of the 2,931 pages produced" by the Crabtrees in discovery. The Crabtrees have controverted and refute the alleged conclusions of Mr. Allen. *Statement of Material Facts*. GREAT LAKES cannot conclusively prove what items of personal property were on board or were removed post-loss. *Id*. Mr. Usher's self-serving positions and legal conclusions are controverted, *id*, and thus cannot demonstrate any violation of the doctrine of *uberrimae fidei*.

At a bare minimum, issues of disputed material fact remain as to this issue, requiring the denial of GREAT LAKES' instant motion. As correctly noted by the Eleventh Circuit Court of Appeals, "the Plaintiff here must do what the Eleventh Circuit requires it to do: 'before [the insurer] can avoid the contract, it must prove its claim.'" *Kilpatrick*, 795 F.2d at 942. GREAT

---

[5] The Crabtrees have filed a *Daubert* Motion to Strike, Preclude, and/or Limit the Testimony of Plaintiff's Disclosed Expert, Mr. Ian D. Allen, D.E. 119, which is pending before this Court.

LAKES has not proved its claim, and summary judgment should instead be entered in favor of the Crabtrees.

**WHEREFORE**, Defendants/Counter-Plaintiffs, BRYAN CRABTREE and BETHEA CRABTREE, respectfully request that this Honorable Court enter an Order: (i) **DENYING** Plaintiff/Counter-Defendant, GREAT LAKES INSURANCE SE's Motion for Summary Judgment; (ii) **ENTER** Summary Judgment in favor of the Crabtrees, in accordance with Rule 56(f); and (iii) for any other relief that this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

As set forth in the Local Rules, the Defendants/Counter-Plaintiffs, BRYAN CRABTREE and BETHEA CRABTREE, move this Court to allot thirty (30) minutes for oral argument to allow Defendants to further articulate the issues discussed within Defendants' instant Response in Opposition.

*CERTIFICATE OF SERVICE TO FOLLOW*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of December 2021, I electronically filed this Response in Opposition with the Clerk of the Court using CM/ECF, I also certify that the foregoing Response in Opposition is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

**PERRY & NEBLETT, P.A.**
2550 South Bayshore Drive Suite 211
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile: (305) 856-8409
david@perryneblett.com
jmahaffey@perryneblett.com
terry@perryneblett.com

By: /s/ *David Avellar Neblett*
DAVID AVELLAR NEBLETT, ESQ., B.C.S.
FL. Bar No.: 526371
JAMES M. MAHAFFEY III, ESQ.
FL. Bar No.: 105353

**SERVICE LIST**

| **Goldman & Hellman** | **Perry & Neblett, P.A.** |
|---|---|
| Steven Goldman, Esq. | David Avellar Neblett, Esq. |
| Jacqueline Goldman, Esq. | James M. Mahaffey III, Esq. |
| 8751 West Broward Blvd., Suite 404 | 2550 South Bayshore Drive, Suite 11 |
| Fort Lauderdale, FL  33324 | Miami, FL 33133 |
| Steven@GoldmanAndHellman.com | david@perrynebelt.com |
| Telephone: (954) 356-0460 | jmahaffey@perryneblett.com |
| Facsimile: (954) 832-0878 | terry@perryneblett.com |
| *Attorneys for Plaintiff/Counter-Defendant* | jack@perryneblett.com |
| | thomas@perryneblett.com |
| | service@perryneblett.com - *For Filing Only* |
| | Telephone: (305) 856-8408 |
| | Facsimile: (305) 967-8182 |
| | *Attorneys for Defendants/Counter-Plaintiffs* |
| | *Bryan Crabtree and Bethea Crabtree* |

By: /s/ *David Avellar Neblett*
DAVID AVELLAR NEBLETT, ESQ., B.C.S.
FL. Bar No.:  526371
JAMES M. MAHAFFEY III, ESQ.
FL. Bar No.:  105353