UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-81544-CIV-ALTMAN/Hunt

**GREAT LAKES INSURANCE SE**,

    *Plaintiff*,

v.

**BRYAN CRABTREE**, *et al.*,

    *Defendants*.

_____/

## ORDER

When Bryan and Bethea Crabtree's vessel was damaged in a fire, they turned to Great Lakes (their insurer) for the proceeds of the boat's insurance policy. Rather than cover the loss, though, Great Lakes sued the Crabtrees in admiralty—seeking declaratory relief and arguing that it has no duty to pay because the Crabtrees (1) failed to satisfy the coverage requirements and (2) made material misrepresentations in their insurance application. The Crabtrees counter-sued, contending that Great Lakes acted in bad faith. In this Order, we address Great Lakes's Motion for a Bench Trial (the "Motion") [ECF No.77]. After careful review, we hold that this lawsuit triggered our admiralty jurisdiction, that the Crabtrees aren't entitled to a jury trial on their counterclaims, and—accordingly—that Great Lakes's Motion is **GRANTED**.

### THE FACTS

Our Defendants, the Crabtrees, owned the S/V Brandison (the "Vessel"). *See* Statement of Stipulated Facts (the "SOF") [ECF No. 34] ¶ 1. In 2019, they applied to the Plaintiff, Great Lakes, for a marine insurance policy to cover the Vessel. *See* Defs.' Second Am. Answer (the "Answer") [ECF No. 38] ¶ 7 (admitting that the Defendants applied for insurance). On April 23, 2019, Great Lakes issued the Vessel a policy that included $250,000.00 in coverage. *See* SOF ¶ 2. Great Lakes's position in this case is that this was a temporary policy conditioned on the Crabtrees' provision of additional

1

materials. *See* Compl. [ECF No. 1] at 3–5.[1] According to Great Lakes, when the Crabtrees failed to provide those materials within the applicable deadline, the policy expired by its own terms. *Id.* at 5–6. Great Lakes also claims that the Crabtrees made certain material misrepresentations in their insurance application. *See id.* at 5–7, 9. The Crabtrees, for their part, disagree that the policy was a mere *temporary* binder, insist that they fulfilled each of the policy's various coverage conditions, and deny making any *material* misrepresentations. *See* Answer ¶¶ 11, 14–16, 18–19, 22–24, 30–33.

In any event, the Vessel was stored "on the hard" at a boat-storage and repair facility in Riviera Beach, Florida. *See* Compl. at 4; *see also* Answer ¶ 12 (admitting that the Vessel was "on the hard at Cracker Boy Boat Works, located in Riviera Beach"). On May 7, 2019, a boat stored next to the Brandison was consumed by a fire that caused significant damage to the Vessel. *See* Compl. at 4; *see also* Answer ¶ 12 (admitting that the "Defendants sustained sudden and accidental loss to their vessel following fire onboard adjacent M/Y 'SEA ALICE' vessel"). After the fire, the Crabtrees filed a Notice of Loss with Great Lakes and demanded payment of $250,000.00—the insured value of the Vessel—under the policy. *See* SOF ¶ 4.

Relying on the coverage defenses we've described above, Great Lakes denied coverage, *see* Compl. at 4–6; SOF ¶ 5, and sued the Crabtrees in the District of Montana, *see generally* Complaint, *Great Lakes Ins. SE v. Crabtree et al.*, Case No. 19-cv-00120-DLC (July 19, 2019). Great Lakes voluntarily dismissed the Montana case "based on the Crabtrees' attorneys' clear representation that they would accept service in Florida." Order Den. MTD [ECF No. 20] at 4. Great Lakes proceeded to sue the Crabtrees here, in the Southern District of Florida—only to take a voluntary in that second case as well. *See* Notice of Voluntary Dismissal, *Great Lakes Ins. SE v. Crabtree et al.*, Case No. 19-cv-23692-JEM (Oct. 8, 2019). In a confounding turn of events, Great Lakes then sued the Crabtrees *again* in the

---

[1] Because of an error in the Complaint's paragraph numbering, *see* Compl. at 4–5 (containing two sets of paragraphs 12 & 13), we cite to page, rather than paragraph, numbers.

District of Montana. *See generally* Compl.; *see also* Order Den. MTD at 3–4 (noting that this case was filed after two prior voluntary dismissals). While all of this was going on, the Crabtrees filed their own lawsuit against Great Lakes—and others—in Florida state court. *See generally* Complaint, *Crabtree v. Great Lakes Ins. SE et al.*, No. 2019-028464-CA-01 (Sept. 26, 2019); *see also* Crabtrees' MTD [ECF No. 11] at 2 ("[A] civil action has already been filed by Defendants Crabtree [sic] in The Circuit Court, Eleventh District in and for Miami-Dade County[.]").

Since the Vessel was stored and damaged in South Florida—and given that the parties were already litigating their issues in Florida state court—the District of Montana transferred its case to us. *See* Order Granting Mot. to Transfer [ECF No. 44]; *see also* Notice of Case Transfer [ECF No. 45]. We promptly ordered the parties to brief the question of whether this case should be set for a bench or a jury trial—an issue that had been obliquely addressed in a prior motion for judgment on the pleadings.[2] *See* May 13, 2021 Hr'g Min. Entry [ECF No. 75]. Great Lakes complied and filed this Motion—now ripe for resolution.[3]

## THE LAW

Under Federal Rule of Civil Procedure 9(h), "[i]f a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim[.]" FED. R. CIV. P. 9(h)(1). The Federal Rules of Civil Procedure "do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)." FED. R. CIV. P. 38(e). In other words, in admiralty cases, "there is no right to a jury trial." *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996). "[I]f there are two grounds for jurisdiction in the same case—such as admiralty and diversity

---

[2] That Motion for Judgment on the Pleadings is now ripe. *See* MJP [ECF No. 64]; Resp. MJP [ECF No. 70]; Reply MJP [ECF No. 71]. But we'll address it in a separate order.
[3] *See* Resp. Mot. Bench Trial (the "Response") [ECF No. 81]; Reply Mot. Bench Trial (the "Reply") [ECF No. 82].

jurisdiction—Rule 9(h) provides that the plaintiff may elect to proceed in admiralty." *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1184 (11th Cir. 2009). "[I]n such dual jurisdiction cases, the plaintiff may elect to proceed in admiralty under Rule 9(h), rather than under diversity jurisdiction, and thereby preclude a defendant from exercising his right to trial by jury." *Id.* at 1184.

## ANALYSIS

In its Complaint, Great Lakes specifically invoked our maritime jurisdiction under 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h). *See* Compl. at 3 ("This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction pursuant to Title 28 of the United States Code, sec. 1333."). In that same Complaint, Great Lakes asserted two causes of action against the Crabtrees[4]—both seeking declaratory relief. In Count I, Great Lakes claims that the "Defendants' breach of the express provision asserted in the Temporary Binder renders the said policy void *ab initio* and/or entitles the Plaintiff to rescind the policy." *Id.* at 7. In Count II, Great Lakes says that the Crabtrees' "misrepresentation or failure to disclose material facts or circumstances constitutes a breach of the duties imposed upon [them] by the express terms of the policy and under the applicable principles of federal maritime law." *Id.* at 9. Both of Great Lakes's causes of action thus turn on our construction and application of the parties' marine-insurance contract.

The Crabtrees answered with eight counterclaims: (1) breach of contract; (2) declaratory relief; (3) tortious breach of Florida's "bad faith" statutes; (4) negligent misrepresentation; (5) fraudulent inducement; (6) estoppel; (7) fraud; and (8) violation of Montana's unfair-claims and settlement law. *See generally* Answer at 11–36. Notably, each of the Crabtrees' counterclaims—for breach of contract,[5]

---

[4] The Complaint actually advanced three claims, *see generally* Compl., but the third was against a defendant that's no longer a party to the case, *see* Order Dismissing Party [ECF No. 8].

[5] *See* Answer ¶¶ 39–43 (repeatedly alleging that "Counter-Defendant, GREAT LAKES INSURANCE SE, breached the contract" and further averring that "Counter-Plaintiffs, BRYAN and BETHEA

4

declaratory judgment,[6] tortious breach of Florida's "bad faith" statutes,[7] negligent misrepresentation,[8] fraudulent inducement,[9] estoppel,[10] fraud,[11] and violation of Montana's unfair-claims and settlement

---

CRABTREE, fulfilled all of their duties under the contract, including all post-loss obligations and any reasonable obligations or duties imposed by Counter-Defendant, GREAT LAKES INSURANCE").

[6] *See, e.g.*, *id.* ¶ 45 ("An actual and justifiable controversy presently exists between Counter-Plaintiffs, BRYAN and BETHEA CRABTREE, and Counter-Defendants, GREAT LAKES INSURANCE SE, concerning the coverage available under the subject policy with respect to the losses, costs or expenses incurred as the result of the subject loss."); *id.* ¶ 51 ("Counter-Plaintiffs, BRYAN and BETHEA CRABTREE, respectfully request this Court to determine and declare Counter-Plaintiffs' and Counter-Defendant, GREAT LAKES INSURANCE SE's[,] rights, duties, and obligations with respect to the losses, costs, or expenses incurred as the result of the subject loss under the terms, provisions, conditions, and endorsements of the subject policy.").

[7] *See id.* ¶ 69 ("Counter-Defendant, GREAT LAKES INSURANCE SE, improperly and willfully failed to promptly settle Counter-Plaintiffs' claim and was *obligated to do so under the insurance policy/binder.*" (emphasis added)).

[8] *See id.* ¶ 77 ("Counter-Defendant, GREAT LAKES INSURANCE SE, had a duty to make truthful representation in all aspects of coverage to Counter-Plaintiffs. Counter-Defendant, GREAT LAKES INSURANCE SE, failed in this duty by its failure to explain exclusions and/or pre- or post- obligation which essentially 'guts' coverage at all times, and/or requests for documents after the subject loss had occurred, per the plain wording of the policy/binder. These failures of duties were the direct and proximate cause of the failure of coverage in the policy purchased by Counter-Plaintiffs which resulted in Counter-Plaintiffs not being afforded coverage for what Counter-Plaintiffs reasonably believed were covered, to wit: accidental casualties and claims involving 'damage' which would ordinarily be covered such as the sudden damage that occurred to Counter-Plaintiffs' Vessel."); *id.* ¶ 79 ("At the time the policy/binder was sold, GREAT LAKES INSURANCE SE knew that the exception to coverage and late request for documents after the loss occurred 'gutted' any purpose to the policy and that any policyholder's belief that coverage exists or existed for claims which any reasonable person would believe are covered were simply the product of GREAT LAKES INSURANCE SE sales tactics and misrepresentations.").

[9] *See id.* ¶ 84 ("On the date the policy/binder became effective, or the date the declarations page/binder was processed, GREAT LAKES INSURANCE SE intended that the representation would induce Counter-Plaintiffs to rely and act on it by purchasing the worthless and illusory policy of insurance at issue when it issued its declaration page/binder[.]").

[10] *See id.* ¶¶ 89–90 ("The representation of coverage at the time of purchase is contrary to the condition of affairs later asserted by GREAT LAKES INSURANCE SE who now asserts in its defenses that the policy governs, that the claim is excepted from coverage due to the exception for exclusions; Counter-Plaintiffs relied upon the representation made by GREAT LAKES INSURANCE SE. As a result of such reliance, Counter-Plaintiffs changed their position from one who was seeking a policy of insurance on their Vessel that provides coverage, to one who had stopped seeking coverage for casualties for its Vessel due to the reasonable belief that such coverage had been obtained.").

[11] *See, e.g.*, *id.* ¶ 97 ("[T]he representations of coverage for accidental claims which involve damage were false at the time they were made and then known to be false, or should have been known to be false by GREAT LAKES INSURANCE SE, who was the author of the language used, and sold, to

law[12]—references the marine-insurance contract, describes the process by which it was executed, details the Crabtrees' compliance with its requirements, or outlines Great Lakes's breach of its terms. As with Great Lakes's claims, then, the viability of the Crabtrees' counterclaims turns on our construction of the marine contract, the circumstances of its formation, and the force of its provisions. The application and interpretation of the parties' marine-insurance contract is, in short, the sum and substance of this dispute.

"It is well settled that cases involving marine contracts give rise to admiralty jurisdiction." *St. Paul*, 561 F.3d at 1184; *see also All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000) ("Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts[.]"). "Marine insurance contracts qualify as maritime contracts, which fall within the admiralty jurisdiction of the federal courts and are governed by maritime law." *GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1139 (11th Cir. 2019). There is a "longstanding tradition in admiralty proceedings that the pleader has the right to determine procedural consequences (including the right to a jury trial) by a simple statement in his pleading that the claim is an admiralty claim." *St. Paul*, 561 F.3d at 1188 (citing FED. R. CIV. P. 9(h), Advisory Committee Note, 39 F.R.D. 69, 75–76 (1966)). And that's precisely what Great Lakes did here. *See* Compl. at 3 ("This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure,

---

Counter-Plaintiffs and the requests made after the loss occurred and after it was put on notice of the loss.").

[12] *See id.* ¶ 101 ("GREAT LAKES INSURANCE violated Mont. Code Ann. § 33-18-201, including but not limited to subsection: (1) (*mispresenting pertinent facts or insurance policy provisions relating to coverages at issue*[)]; (4) (refusing to pay claims without conducting a reasonable investigation based upon all available information); (5) (*failing to affirm or deny coverage within a reasonable time*); (6) [(]neglecting in good faith to effectuate a prompt, fair and equitable settlement where liability is reasonably clear)" (emphasis added)); *id.* ¶ 102 ("GREAT LAKES INSURANCE SE also violated Mont. Code Ann. § 33-18-201, including b[ut] not limited to subsection (7) by compelling Counter-Plaintiffs to institute litigation to recover *amounts due under an insurance policy*, which upon information and belief, GREAT LAKES INSURANCE SE does with such frequency as to indicate a general business practice." (emphasis added)).

and this Court has jurisdiction pursuant to Title 28 of the United States Code, sec. 1333."). Since this case turns on our construction of a maritime-insurance contract—and given Great Lakes's clear and unambiguous invocation of our maritime jurisdiction—Great Lakes is entitled to a bench trial on its claims.

And the Defendants don't get to a jury by asserting counterclaims that arise from the same marine-insurance contract Great Lakes attached to its Complaint. *See St. Paul*, 561 F.3d at 1188. In *St. Paul*, the plaintiff-insurer (like Great Lakes here) sued its insured in federal court—invoking the court's maritime jurisdiction and asking for a declaration that the parties' marine-insurance contract was null and void. *Id.* at 1184–85. In response, the defendant-insured (like the Crabtrees) counterclaimed and demanded a jury trial. *Id.* The plaintiff-insurer "then moved to strike [the defendant's] demand for a jury trial." *Id.* at 1185. Sound familiar? "Based on [the old Fifth Circuit's] precedent in *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968 (5th Cir. 1978), the district court granted [the plaintiff's] motion and struck [the defendant-insured's] jury demand." *Id.* In doing so, the "district court concluded that [the plaintiff-insurer's] Rule 9(h) designation of its marine insurance claim as an admiralty claim trumped [the defendant-insured's] jury-trial right on its breach-of-contract counterclaim where [the defendant-insured's] counterclaim arose out of the same operative facts and same Marine Policy as [the plaintiff-insurer's] claim." *Id.* The Eleventh Circuit affirmed, *id.* at 1192, reasoning that "Rule 9(h) expressly authorizes [the plaintiff-insurer] to elect to proceed in admiralty rather than some other ground of jurisdiction, such as diversity." *Id.* at 1188 (quotation omitted). Our case is just the same: Great Lakes invoked our maritime jurisdiction when it sued the Crabtrees for a declaration of its obligations under the terms of a marine-insurance policy. The Crabtrees then counterclaimed and demanded a jury. As in *St. Paul*, however, Rule 9(h) "authorizes" Great Lakes "to elect to proceed in admiralty[.]"

Nor are we alone in interpreting *St. Paul* and *Harrison* in this way. In fact, in light of *St. Paul* and *Harrison*, courts in this Circuit have consistently held that, where the plaintiff "has only proceeded by way of Rule 9(h) in its complaint," the defendant "is not entitled to a jury trial." *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Vinardell Power Sys., Inc.*, 2019 WL 1440383, at *4 (S.D. Fla. Apr. 1, 2019) (Moreno, J.); *see also New York Marine & Gen. Ins. Co. v. Boss Interior Contractors, Inc.*, 2021 WL 1535401, at *2 (S.D. Fla. Apr. 19, 2021) (Bloom, J.) ("[T]he Eleventh Circuit explained that when a counterclaim arises out of the same operative facts and same marine policy at issue in a plaintiff's claim, the Rule 9(h) designation made by the plaintiff will trump the jury trial asserted by a defendant in its counterclaim."); *Carnival Corp. v. Stankovic*, 2016 WL 9274718, at *1 (S.D. Fla. Dec. 12, 2016) (Torres, Mag. J.) ("The well-settled rule in the Eleventh Circuit is that a defendant normally has no right to a jury trial where plaintiff has proceeded with an admiralty and maritime claim."); *Great Lakes Reinsurance (UK) PLC v. Kan-Do, Inc.*, 2013 WL 2249291, at *2 (M.D. Fla. May 22, 2013) (Covington, J.) ("The Court reaches the same result [as *St. Paul*] here and strikes KanDo's jury demand. In addition to being in accord with the binding precedent of *Harrison* and [*St. Paul*], the Court's decision to strike the jury demand is consistent with numerous district court decisions, which the Court finds to be persuasive."); *New Hampshire Ins. Co. v. Wiregrass Constr. Co.*, 2010 WL 3339019, at *1 (S.D. Ala. Aug. 23, 2010) ("The defendant cannot and does not suggest that [*Harrison* is] not the law of this Circuit. Nor can it deny that the plaintiff's election was effective, since the complaint expressly designated the claim as in admiralty and expressly invoked Rule 9(h)."); *Great Lakes Reinsurance (UK) PLC v. Masters*, 2008 WL 619342, at *1–2 (M.D. Fla. Mar. 3, 2008) (Bucklew, J.) ("In *Harrison*, the court concluded that the plaintiff's election to proceed under Rule 9(h) trumped a fourth-party defendant's desire for a jury trial. . . . [T]he Court finds that Great Lakes' election to proceed in this declaratory action without a jury pursuant to Rule 9(h) trumps Masters' demand for a jury trial on his counterclaim."); *Underwriters v. On the Loose Travel, Inc.*, 1999 WL 694212, at *1 (S.D. Fla. Mar. 23, 1999) (Ungaro, J.) (citing *Harrison*

8

for the proposition that "[n]o right to trial by jury exists with respect to claims brought under federal admiralty jurisdiction Rule 9(h) and the Court finds that the trial by jury preclusion extends to counterclaims").

Indeed, in cases where "the marine insurance policy that [the defendant-insured] seeks to enforce in its breach of contract counterclaim is the very contract" under which the plaintiff-insurer "seeks to have the Court interpret its declaratory judgment action"—and where the plaintiff "has also properly invoked the District Court's admiralty jurisdiction under Rule 9(h)"—a bench trial is appropriate. *Great Lakes Reinsurance (UK) PLC v. Soriano*, 2015 WL 12778783, at *2 (S.D. Fla. June 24, 2015) (Goodman, Mag. J.).

Against all this, the Crabtrees advance six arguments—all unavailing.

*First*, the Crabtrees contend that "the instant case is distinguishable from *St. Paul* and its predecessor." Response at 4. Distinguishable how? Because (the Crabtrees say), "[i]n *St. Paul Fire*, the plaintiff-insurer sought damages against the defendant-insured, and vice versa"—whereas, in our case, "only the Crabtrees seek and assert damages against the insurer via counterclaims, and as such, only the Crabtrees should be considered 'suitors'" under 28 U.S.C. § 1333(1). *Id.* at 4–5. As Great Lakes points out, however, the Crabtrees misread *St. Paul*. *See* Reply at 6 ("The Defendants falsely claim that this matter is distinguishable from *St. Paul* because GREAT LAKES is not pursuing damages in this matter, unlike the insurer in *St. Paul*. Contrary to the Defendants' assertions, St. Paul Fire and Marine Ins. Co. did not seek damages in that case, but rather, like GREAT LAKES in the present matter, it merely sought a declaration of its rights and obligations under the marine insurance contract.").

As we've said, in *St. Paul*, the plaintiff-insurer (as here) sought only a declaration that it had no duty to cover the defendant's losses. *St. Paul*, 561 F.3d at 1185. It did *not* seek damages. *Id.* In fact, the defendant-insured in that case had tried to distinguish an earlier case (*Harrison*) by pointing out that, while the plaintiff-insurer in *Harrison* had sought money damages, the *St. Paul* plaintiff had *not*. *Id.* at

9

1188 (noting that the defendant-insured had "contended that *Harrison* should not apply because [the plaintiff-insurer] brought a declaratory judgment, whereas the plaintiff in *Harrison* brought a suit for damages"). This discussion would have made little sense if, as the Crabtrees insist, the *St. Paul* plaintiff *had* sought money damages. The Crabtrees, then, have pointed to a distinction that—unfortunately for them—doesn't exist.

What's more, the distinction—if it did exist—wouldn't help the Crabtrees anyway. In *St. Paul*, the Eleventh Circuit made clear that *Harrison*'s application has *nothing* to do with—and is not affected by—the plaintiff-insurer's decision to seek (or not to seek) money damages. As the court explained: "[t]he problem for [the defendant-insured] is that *Harrison* in no way depended on the fact that the plaintiff filed a complaint for damages instead of declaratory judgment against a defendant." *Id.* Instead, what mattered in *St. Paul*—and what matters here—is that, "in admiralty cases, 'by electing to proceed under Rule 9(h), rather than by invoking diversity jurisdiction, the plaintiff may preclude the defendant from invoking the right to trial by jury which may otherwise exist.'" *Id.* (quoting *Harrison*, 577 F.2d at 986).

*Second*, the Crabtrees ask us to disregard Great Lakes's request to proceed in admiralty because (they say) the insurer "specifically, intentionally, and unfairly 'raced' to the courthouse to file an action that sought to deprive the Crabtrees of their right to a trial by jury." Response at 5. Here, the Crabtrees rely primarily on *Continental Insurance Co. v. Industry Terminal & Salvage Co.*, 2005 WL 2647950, at *2 (W.D. Penn. Oct. 17, 2005), where "the district court denied [a] motion to strike [the] defendant's jury demand because granting it would 'be encouraging parties to engage in an inauspicious race to the courthouse.'" Response at 5 (quoting *Cont'l Ins. Co.*, 2005 WL 2647950, at *2). For two reasons, *Continental Insurance* cannot instruct us here.

*One*, the district court in that case was clear to note that it was drawing on a blank canvas— that, in other words, "there [was] no controlling case law directly on point in th[at] circuit." *Cont'l Ins.*

10

*Co.*, 2005 WL 2647950, at *1. But, as we've spent some time showing, that's just not the case in our Circuit—where *Harrison* and *St. Paul* squarely resolve this issue. In admiralty cases in *this* Circuit, then, "there is no right to a jury trial." *Beiswenger*, 86 F.3d at 1037.[13] We thus needn't rely on the Western District of Pennsylvania for guidance. *See Boss Interior Contractors, Inc.*, 2021 WL 153401, at *3 (rejecting the defendant-insured's (very) similar argument that "it should not lose its right to jury trial because [the plaintiff-insurer] 'raced to the courthouse,'" and noting that the defendant-insured "cited no authority to support such an assertion, especially in light of the Eleventh Circuit's holding in *St. Paul*").

*Two*, we're not convinced that Great Lakes engaged in any bad-faith antics here. Recall that, when this case was still in the District of Montana, Judge Christiansen noted what "appear[ed]" to be "gamesmanship on the part of the Crabtrees[.]" Order Den. MTD at 4. And (notably), *before* filing this case, Great Lakes twice dismissed its lawsuit—once specifically to accommodate the Crabtrees' expressed preference for Florida. *Id.* ("Great Lakes filed and voluntarily dismissed two prior federal actions against the Crabtrees[.] . . . The first District of Montana case was voluntarily dismissed based on the Crabtrees' attorneys' clear representation that they would accept service in Florida."). Even were this question relevant, in short, we find little support for the Crabtrees' gamesmanship complaints.

---

[13] The Crabtrees also cite *Harville v. Johns-Manville Products Corp.*, 731 F.2d 775, 779 (11th Cir. 1984), for their view that, while there may be no *general* right to a jury trial in admiralty cases, "a jury trial 'can be had if there is also a basis for diversity jurisdiction." Response at 4. But the plaintiff in *Harville* had neglected to invoke the district court's admiralty jurisdiction. *See Harville*, 731 F.2d at 779 ("The plaintiffs have refrained from asserting admiralty jurisdiction, 28 U.S.C. § 1333(1), apparently in order to obtain a jury trial, which, although not generally available in admiralty, can be had if there is also a basis for diversity jurisdiction."). Our Plaintiff, of course, has done just the opposite: it expressly invoked § 1333(1) and cited Rule 9(h) in its Complaint. *See* Compl. at 2 ("This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction pursuant to Title 28 of the United States Code, sec. 1333."). *Harville*, then, is neither here nor there.

11

*Third*, the Crabtrees analogize our case to the facts of a case Judge Middlebrooks dismissed two years ago. *See* Response at 3 (citing *In the Matter of the Complaint of 106923 BC Ltd., as Owner of Motor Yacht "Sea Alice*,*"* Case No. 19-cv-81495-DMM (S.D. Fla. Apr. 15, 2020) (Slip. Op.) (hereinafter "*Sea Alice*") at *2). In that case, the boat that caught fire *next to* the Brandison "invoke[d] the protection of the Limitation of Liability Act" against various parties, including Mr. Crabtree (who appeared as a claimant). *Sea Alice* at *1. As the Crabtrees point out, Judge Middlebrooks ultimately "dismissed for lack of admiralty jurisdiction." *Id.* The Crabtrees seem to believe that, because there was no admiralty jurisdiction in that case, there must be none here. But the petitioner there had argued that the "Court ha[d] admiralty jurisdiction arising out of [p]etitioner's maritime contract with [the storage facility]." *Id.* at *2. The problem, as Judge Middlebrooks noted, was that "there [was] no reference in the Petitioner's Complaint to th[e] contract." *Id.* Because the "Petitioner d[id] not allege that [the facility] ha[d], in any way, breached its contract," Judge Middlebrooks "decline[d] to hold that admiralty jurisdiction may be invoked merely because a maritime contract exists, where the parties' dispute bears no relationship to that contract." *Id.* at *4. Here, by contrast, Great Lakes repeatedly referenced the contract in its Complaint—to which it attached the contract as an exhibit. *See generally* Compl.; *see also* Temporary Binder [ECF No. 1-2]. Nearly all of the parties' claims and counterclaims, moreover, arise from that contract—whose essential terms each side *expressly* claims the other violated. Our case thus differs in salient ways from the complaint Judge Middlebrooks dismissed in *Sea Alice*.

*Fourth*, as the Crabtrees point out, "[s]ome courts have held that 'when [the] defendant raises a counterclaim with a non-maritime ground for federal jurisdiction, the Seventh Amendment protects the right to jury trial over the counterclaim." Response at 7 (citing *Adams v. James Transp., LLC*, 2010 WL 4789290, at *2 (W.D. Ken. Nov. 17, 2010); *Wilmington Trust v. U.S. Dist. Ct. for Dist. of Haw.*, 934 F.2d 1026, 1032 (9th Cir. 1991); *Reliance Nat'l Ins. Co. (Europe) Ltd. v. Hanover*, 222 F. Supp. 2d 110, 115–16 (D. Mass. 2003); *Canal Barge Co. v. Commonwealth Edison Co.*, 2002 WL 206054, at *4 (N.D. Ill.

12

Feb. 11, 2002)). But all of these cases come from outside our Circuit—and, as we've explained, the law in our Circuit squarely forecloses the Crabtrees' position. One of the Crabtrees' cases, in fact, characterizes their position—*viz.*, that the Seventh Amendment protects the jury rights of defendants who advance non-maritime counterclaims—as the "minority approach" and notes that "the prevailing rule denies the defendant trial by jury where the plaintiff elects to bring the action under Rule 9(h) and maritime law." *Adams*, 2010 WL 4789260, at *2. These cases thus do not save the Crabtrees here.

*Fifth*, the Crabtrees insist that their counterclaims are distinct enough from the Plaintiff's claims to entitle them to a jury trial. *See* Response at 2 (distinguishing the counterclaims as "extracontractual"). We disagree. Under *St. Paul*, what matters is whether the claims and counterclaims *arise from* the same set of operative facts. 561 F.3d at 1185, 1192 (affirming the district's court holding that the admiralty designation trumps the jury-trial right "where [the] counterclaim arose out of the same operative facts" and policy as the claims). Since the viability of the Crabtrees' counterclaims turns on our construction and application of the contracts, *St. Paul* forecloses the Crabtrees' position here. *See Boss Interior Contractors, Inc.*, 2021 WL 1535401, at *2 (rejecting the defendant-insured's attempt to distinguish *St. Paul* by "arguing that [the plaintiff-insurer's] causes of action involve alleged pre-contract misrepresentations and are therefore completely different from [the defendant-insured's] breach of contract action," because the "counterclaim arises out of the same operative fact and same marine policy at issue in [the] plaintiff's claim" (citing *St. Paul*, 561 F.3d at 1185, 1192)).

*Sixth*, the Crabtrees claim entitlement to a jury trial because (they say) this is a "hybrid" case—*i.e.*, a case in which some claims trigger the Seventh Amendment right and some don't. *See* Response at 3. In saying so, however, they cite only a student's law review comment. *See id.* at 3–5 (citing Brett P. Hargaden, *Salvaging the Term "Suitor": How the Declaratory Judgment Act has Commandeered Congressional Intent*, 22 ROGER WILLIAMS U. L. REV. 453, 464 (2017)). That, of course, would be bad enough—but it gets worse: the student's main premise is that the Eleventh Circuit got it wrong in *St. Paul*—whose

13

holding, the student maintains, resulted from a "critical flaw in the court's reasoning[.]" Hargaden, *supra*, at 464. We cannot (it should go without saying) ignore binding Eleventh Circuit precedent in favor of a student comment from the Roger Williams University Law Review.

*One more thing*. The Crabtrees imply—though, to their credit, they never explicitly argue—that we cannot exercise our admiralty jurisdiction over this case because the fire occurred while the Vessel was on land. *See* Response at 3 ("Notably, the loss of the Crabtrees' Vessel occurred 'on the hard,' and removed from navigable waters."). They seem to suggest, in other words, that, for purposes of deciding whether a *marine*-insurance contract should be adjudicated under *maritime*-law principles, what matters is whether the Vessel happened to be in the water at a particular time. But that isn't the law. Instead, "[t]he boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—[are] conceptual rather than spatial." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004). Our admiralty jurisdiction, in short, is implicated by the *nature* of the contract at issue—by the fact that it *is* a contract for maritime insurance—and not by where the boat happened to be when it caught fire. *See Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1250 (S.D. Fla. 2010) (Jordan, J.) ("The dispute in this case concerns a marine insurance policy issued for a vessel, thereby giving rise to federal admiralty jurisdiction."); *see also Shackleford*, 945 F.3d at 1139 (noting that a contract for marine insurance "qualif[ies] as [a] maritime contract[ ], which fall[s] within the admiralty jurisdiction of the federal courts and [is] governed by maritime law").

\*\*\*

For all these reasons, Great Lakes Insurance's Motion for a Bench Trial [ECF No. 77] is **GRANTED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 12th day of January 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     Counsel of Record