UNITED STATES DISTRICT COURT
SOUTHERN DISRTICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES INSURANCE SE,

     Plaintiff,

                                  Case No. 9:20-cv-81544-RKA

vs.

BRYAN CRABTREE, *et al.*,

     Defendants.

                                      /

## JOINT PRETRIAL STIPULATION

COME NOW the parties hereto, Plaintiff/Counter-Defendant GREAT LAKES INSURANCE SE (hereinafter "GREAT LAKES"), and Defendants/Counter-Plaintiffs BRYAN CRABTREE and BETHEA CRABTREES (hereinafter "the CRABTREES"), by and through their respective undersigned counsel, pursuant Rule 16.1(e) of the Local Rules of the United States District Court for the Southern District of Florida and this Court's Amended Scheduling Order, dated March 8, 2022 [ECF No. 143], and hereby file this the Joint Pretrial Stipulation, and further thereto would respectfully state as follows:

1. **Statement of the Case**

    1. **Plaintiff's Statement of the Case**

This action concerns a Temporary Binder for a policy of insurance that was issued by GREAT LAKES to the CRABTREES. On or about April 17, 2019, the CRABTREES submitted an application for a policy of marine insurance to cover the vessel identified therein, a Brandison, 2000 43' Privilege with Volvo twin 39hp diesel engine, JMA52U07B001 (hereinafter "the

1

Vessel"). The application was submitted to GREAT LAKES's underwriting and claims handling agent, Concept Special Risks, Ltd. (hereinafter "Concept"). As part of the application, the Defendants submitted a Letter of Survey Recommendations Compliance (hereinafter "the LOC"), dated April 17, 2019, in which they "certif[ied]" that the Vessel had been surveyed by Brian Stetler on March 23, 2019 (hereinafter "the Stetler Survey"). As a further part of the LOC, the Defendants certified that all of the recommendations contained in the Stetler Survey had been complied with, (except for some minor delamination on the port bow which had an "expected completion date" of May 2, 2019). However, without including the condition and valuation survey upon which the LOC relied, as well other necessary information and documentation, Concept could not issue its standard one-year policy.

Thus, in reliance upon the truth of the material facts disclosed in the application and in the LOC, Concept issued a Temporary Binder, Policy No. CSRYP/175139, affording $250,000.00 in first-party property damage coverage for the Vessel against the risks detailed therein for the period between April 23, 2019 through May 24, 2019. As a condition of the Temporary Binder, certain information and documents were required to be submitted to Underwriters by May 24, 2019, or the Temporary Binder would be void from inception. The items and information required by the Temporary Binder included, but were not limited to, the condition and valuation survey referenced in the LOC.

The Temporary Binder clearly established the receipt of these various items of information and documentation as a condition precedent to coverage wherein it stated:

Temporary Binder
Valid to May 24, 2019
[….]
Temporary Binder Pending:

[list of items and documents]

**Warning: Unless the above detailed documents/information are supplied in full by the date detailed on this temporary binder, coverage is void from inception.**

On May 7, 2019, the Vessel was damaged when the vessel next to it, the "SEA ALICE," was consumed by a fire. Once Concept received notice, the Plaintiff caused an investigation to be made into the facts and circumstances of the loss. In the meantime, Concept sent not one but two separate reminders to the Defendants via their agent, Burns & Wilcox, Ltd. (hereinafter "Burns & Wilcox"), reminding them of the outstanding items required by the Temporary Binder. True and correct copies of these reminders were previously filed as ECF No.'s 1-3 and 1-4. Despite these efforts, numerous documents were not received prior the expiration of the Temporary Binder on May 24, 2019. *Id.*, at ¶23. Some documents were belatedly produced by Burns & Wilcox on June 7, 2019, including the Stetler Survey referenced in the LOC. However, the Plaintiff's investigation determined that the Defendants had failed to complete numerous recommendations detailed in the Stetler Survey, contrary to the representations in the LOC. Thereafter GREAT LAKES denied coverage for the fire loss on two bases: (1) failure to comply with the express terms of the Temporary Binder made coverage void from inception and, (2) misrepresentation of material facts in the LOC voided the Temporary Binder from its inception.

In discovery in this matter, the Plaintiff served the Defendants with a Request for Production seeking copies of whatever documents they had in their possession that would demonstrate their compliance with the recommendations in the Stetler Survey, which, after much delay, this Court ordered them to produce. The Defendants produced 2,931 pages of documents. Plaintiff retained Captain Ian Allen, licensed surveyor and adjuster, to review these documents. As stated in his Declaration, Capt. Allen has concluded that there is no proof (in the form of

3

receipts or work orders) that numerous recommendations were ever completed, including, but not limited to, the recommendations concerning the Vessel's fire extinguishers.

Concept requires a condition and valuation survey on all vessels over five years old, and is the only means by which Underwriters are able to ascertain the condition of the vessel. The LOC specifically inquires into whether all of the pre-insurance survey recommendations have been complied with because these facts are crucial to Concept's consideration of whether to issue a policy and on what terms. Had the Defendants truthfully disclosed to Underwriters that certain recommendations were not in fact complete, GREAT LAKES would have refused to issue the Temporary Binder. As stated in the Declaration of Beric Anthony Usher, Managing Director and Senior Underwriter at Concept, had the CRABTREES truthfully disclosed in the LOC that just the recommendations as to the Vessel's fire extinguishers had not been completed, he would have refused to issue any policy at all until and unless those recommendations were completed and a new LOC was submitted to Underwriters. This is because Concept would never agree to insure a vessel that was not maintained in a seaworthy condition or in keeping with USCG regulations.

### 2. Defendants' Statement of the Case

This case concerns the unfortunate loss of Defendants/Counter-Plaintiffs BRYAN CRABTREE and BETHEA CRABTREE's (hereinafter "the Crabtrees") recently purchased Vessel (the S/V "BRANDISON," a 2000 43 ft Privilege vessel with Volvo twin 39 hp diesel engines), that was severely damaged when an adjacent vessel caught fire while "on the hard" at a boatyard. The Crabtrees had recently purchased their Vessel and had contemporaneously procured an "agreed value," "all-risks" insurance policy on their newly purchased Vessel, issued by Plaintiff/Counter-Defendant, GREAT LAKES INSURANCE SE (hereinafter "GREAT LAKES"),

valid from April 23, 2019, until April 23, 2020. The subject policy/binder provides an agreed value coverage of $250,000.00 in Hull coverage, $25,000.00 in Personal Property coverage, as well as additional coverages. GREAT LAKES agreed to issue over $275,000 in coverage and the Crabtrees paid all applicable premiums to the insurance company.

The Crabtrees had selected the Cracker Boy Boat Works, Inc. boatyard, located in Riviera Beach, Florida, to commence retrofit and repairs upon the Vessel prior to her maiden voyage. On the morning of May 7, 2019, approximately fifteen (15) days after buying the yacht and procuring insurance an adjacent yacht set fire and the S/V BRANDISON sustained serious damage due to the fire. The Crabtrees loss was fortuitous and due to no fault of the Crabtrees. It cannot be disputed that the Crabtrees' loss occurred while the binder/policy was in full effect. Further, the Crabtrees' Vessel loss is in no way connected to application for insurance. Immediately following the loss, the Crabtrees timely notified GREAT LAKES of their loss, and began mitigation efforts, including moving equipment and damaged personal property off the fire damaged Vessel.

After the loss, Concept Special Risks, Ltd. (GREAT LAKES' "managing general agent") hired the adjusting firm Arnold & Arnold to handle the Crabtrees' loss. The Crabtrees contend that the "investigation" was improper or occurred in bad faith, as GREAT LAKES and its agents changed their position (and adjusters) several times during the investigation process, to concoct reasons to improperly deny the Crabtrees' insurance claim. The Crabtrees were informed by Arnold and Arnold that this was a covered loss and that there are no issues, and GREAT LAKES agrees that the Vessel is a total loss.

Rather than rightfully indemnifying its insureds in accordance with the subject policy, Plaintiff, GREAT LAKES, denied the claim, and contemporaneously brought suit against its

5

former insureds. In fact, the first time the Crabtrees were informed of any covered issues was via the denial letter which included with a copy of a lawsuit filed against the Crabtrees in federal court in Montana. Accordingly, the Crabtrees have counter-sued GREAT LAKES alleging Breach of Contract, Declaratory Relief, Willful Tortious Breach of Section 624.155, Florida Statutes, Negligent Misrepresentation, Fraudulent Inducement, Estoppel, and Fraud. *See* Defs.' 2d Am. Ans., ECF No. 38; *see also* Order, ECF No. 138.

### 2.  The Basis of Federal Jurisdiction

The Court has ruled that Plaintiff's claim is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. *See* Court Order, ECF No. 136. As to Plaintiff's claim, this Court has subject matter jurisdiction under 28 U.S.C. § 1333.

### 3.  The Pleadings Raising the Issues

1.  Plaintiff's Complaint [ECF No. 1].

2.  Defendants' Second Amended Answer and Affirmative Defenses and Counterclaims and Demand for Jury Trial [ECF No. 38].

3.  Plaintiff's Answer and Affirmative Defenses to Defendants' Counterclaim [ECF No. 41].

### 4.  Undisposed Motions or Other Matters Requiring Action by the Court

1.  Defendants' Unopposed Motion to Modify Scheduling Order and/or To Extend Discovery [ECF No. 114].

2.  Plaintiff's Motion to Strike F. David Famulari, Esq. As An Expert, filed on November 10, 2021 [ECF No. 116].

3.  Plaintiff's Motion for Summary Judgment, filed on November 10, 2021 [ECF

No. 118].

4. Defendants' *Daubert* Motion to Strike, Preclude, and/or Limit the Testimony of Plaintiff's Disclosed Expert, Mr. Ian D. Allen, filed on November 10, 2021 [ECF No. 119].

5. Defendants' Motion for Judgment on Partial Findings, or Alternatively, Request for Evidentiary Hearing, Upon Plaintiff's Violation of Rule 41(a)(1) [ECF No. 146].

6. Plaintiff's Unopposed Motion for Continuance [ECF No. 145].

7. Plaintiff's Unopposed Motion for Extension of Time to File Opposition to Defendant's Motion for Judgment on Partial Findings [ECF No. 147].

8. The parties' respective motions *in limine*.

## 5. <u>Statement of Uncontested Facts</u>

1. The CRABTREES, at all relevant times, owned a 2001 Privilege 435 sailing vessel named "BRANDISON" (hereinafter "the Vessel").

2. On or about May 7, 2019, while stored on the hard at Cracker Boy Boat Works located in Riviera Beach, Florida, the Vessel was damaged in a fire believed to have been caused when an adjacent vessel at the said location caught fire.

3. The Crabtrees made a demand to Plaintiff, for payment of the full insured value of the Vessel.

4. Plaintiff refused to indemnify the Crabtrees for the loss to the S/V BRANDISON.

## 6. <u>Issues of Fact Which Remain to Be Litigated At Trial</u>

*Issues of fact proposed by Plaintiff, GREAT LAKES:*

1. On or about April 23, 2019, Plaintiff issued Temporary Binder No. CSRYP/175139, affording Hull & Machinery coverage in the amount of $250,000.00 for a period beginning April 23, 2019 to May 24, 2019.

2. Whether the Defendants complied with the terms of the Temporary Binder.

3. Whether the Defendants completed all of the Category "A" and "B" Stetler Survey recommendations.

4. Whether the Defendants made any misrepresentations of material fact in the Letter of Survey Recommendations Compliance.

5. The Temporary Binder contains the following choice of law clause:

   It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

6. Great Lakes is a wholly owned subsidiary of Munich Re, which owns American Re, and the offices of both Munich Re and American Re are located in New York.

7. Great Lakes is admitted as a surplus lines insurer in New York, and all 50 of the United States.

8. Great Lakes maintains bank accounts in New York.

9. Great Lakes accepts service of process through attorneys in New York.

8

10. Concept was at all times relevant hereto the exclusive managing general agent of GREAT LAKES.

11. Burns & Wilcox was the agent of the CRABTREES and not of GREAT LAKES.

12. Burns & Wilcox had no authority to bind Concept/GREAT LAKES.

*Issues of fact proposed by Defendants, the Crabtrees:*

13. That on or about April 23, 2019, Plaintiff issued insurance coverage affording Hull & Machinery coverage in the amount of $250,000.00, Personal Property coverage in the amount of $25,000.00, and other coverages, under Policy No. CSRYP/175139, for the Period of Cover from April 23, 2019, to April 23, 2020.

14. Whether GREAT LAKES breached the contract of insurance.

15. Whether Plaintiff's claim is precluded via its filing of two Notices of Voluntary Dismissal as to the instant claim. *See* Fed. R. Civ. P. 41(a).

16. Whether GREAT LAKES can rely upon a policy that they claim was never in effect or void.

17. That Burns & Wilcox is the agent of the GREAT LAKES.

18. That Burns & Wilcox received premiums and held on to same, on behalf of the insurance company.

19. That Burns & Wilcox received documents and manuals on behalf of the insurance company, including policies, application forms, letters, etc.

20. Whether GREAT LAKES can rely upon or attempt to reply upon documents it

did not accept or it contends it was not in possession of.

21. Whether the Crabtrees were ever provided or in possession of the full policy language associated with the subject policy/binder of insurance.

22. Whether the Crabtrees' paid premiums were timely returned.

23. Whether Great Lakes acted in good faith towards its insureds, the Crabtrees.

24. The applicable law that applies to both parties' respective claims, as same has yet to be decided by the Court.

25. Whether Great Lakes breached the subject policy of insurance in denying the Crabtrees' claim.

26. Whether Great Lakes' and its hired adjusters/agents are able to support Great Lakes' coverage defenses.

27. Whether Great Lakes and its hired adjusters' contradictory statements acted as waivers of purported policy provisions.

28. Whether Great Lakes and its hired adjusters' actions acted as waivers of purported policy provisions.

29. The Crabtrees' request for Declaratory Relief.

30. Whether Great Lakes made negligent misrepresentations to the Crabtrees.

31. Whether Great Lakes engaged in fraudulent inducement in providing insurance to the Crabtrees.

32. Whether the doctrine of Estoppel is applicable in light of Great Lakes and its representatives' changed positions.

33. Whether Great Lakes engaged in fraud in providing insurance to the Crabtrees.

34. Whether any alleged breaches are material or related to the subject loss.

35. Question regarding the "materiality" of various recommendations and substantial compliance/impossibility, if relevant.

## 7. <u>Agreed Upon Issues of Law</u>

1. The Federal Rules of Civil Procedure apply.

2. The Federal Rules of Evidence apply.

## 8. <u>Disputed Issues of Law</u>

1. The law of the case has yet to be determined by this Court. The Crabtrees maintain that Florida law applies to all or some of their claims for relief, including any and all extracontractual claims.

2. Any and all questions regarding agency.

3. The legal question regarding the "materiality" of various recommendations, if relevant.

4. The legal questions regarding substantial compliance or impossibility, if relevant.

5. Whether the doctrine of Estoppel is applicable under the instant facts.

6. Plaintiff contends that the Temporary Binder is governed by federal admiralty law, or in the absence of a federal admiralty rule, New York substantive law applies. Where there exists a rule of federal admiralty law, policies of marine insurance are governed by federal admiralty law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310; 1955 A.M.C. 467 (1955). Where no established rule of federal admiralty law exists, state law will control. *Id.*, at

11

315. The Temporary Binder contains a choice of law clause which calls for the application of federal admiralty law to "any dispute arising hereunder," or New York law in the absence of an applicable rule of federal admiralty law. Under New York law, an insured's failure to comply with a condition precedent in a policy of marine insurance is a total defense to coverage. *See, e.g., Cross v. State Farm Ins. Co.*, 926 F. Supp. 2d 436 (N.D.N.Y. 2013), *Cortes Molina v. TL Dallas (Special Risks) Ltd.*, 547 F. Supp. 2d 102, 111 (D.P.R. 2008). The issue of whether the Defendants made material misrepresentations to Underwriters will be decided per the federal admiralty doctrine of *uberrimae fidei*, or "utmost good faith." *See Quintero v. Geico Marine Ins. Co.*, 983 F.3d 1264, 1270–71 (11th Cir. 2020) (stating "[i]t is well settled that the marine insurance doctrine of *uberrimae fidei* is the controlling law of this circuit.") The doctrine of *uberrimae fidei* requires that prospective insureds conduct themselves in utmost good faith in supplying information to an insurer. Under this doctrine, even unintentional material misrepresentations will render a policy void. *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362-63 (11th Cir. 2000).

7. Any issues of fact to the extent they involve issues of law.

## 9. **Trial Exhibits**

1. Plaintiff's Trial Exhibit List is attached hereto as Exhibit "A."

2. Defendants' Trial Exhibit List is attached hereto as Exhibit "B."

## 10. **Trial Witnesses**

12

*Plaintiff's Trial Witnesses*:

1. Bryan Crabtree (will call)

2. Beric Anthony Usher, Managing Director & Senior Underwriter at Concept and Plaintiff's Corporate Representative (will call)

3. Alexander Considine, Underwriter at Concept (will call)

4. Neil Burton, Underwriter at Concept (may call)

5. Kathy Smith, Admin Manager at Concept (will call)

6. Alexander Mark Thomas, Director & Marine Claims Manager at Concept (will call)

7. Samantha Thomas, Claims Technician at Concept (may call)

8. Sarah Delacey-Simms, Claims Manager at Concept (may call)

9. Liam Gilhooly, Underwriter at Concept (may call)

10. Roy Cramer, surveyor (will call)

11. Alan Ridenour, Arnold & Arnold (will call)

12. Captain Ian Allen, Arnold & Arnold (will call)

13. Any and all impeachment, rehabilitation, and/or rebuttal witnesses, as necessary.

14. Any and all witnesses listed upon Defendants' Trial Witness List.

*Plaintiff's Expert Witnesses*:

1. Captain Ian Allen

*Defendants' Trial Witnesses*:

1. Bryan Crabtree (will call)

2.  Ian D. Allen (will call)

3.  Beric Anthony Usher (will call)

4.  Corporate Representative of GREAT LAKES INSURANCE SE (will call)

5.  Corporate Representative of Concept Special Risks Ltd. (will call)

6.  Sam Schirmer (may call)

7.  Kathy Smith (will call)

8.  Liam Gilhooly (may call)

9.  Mark Thomas (will call)

10. Samantha Thomas (may call)

11. Sarah Delacey Simms (may call)

12. Corporate Representative of Arnold & Arnold, Inc. (will call)

13. Hap Arnold (may call)

14. Alan Ridenour (may call)

15. Roy G. Cramer (may call)

16. Brian G. Stetler (may call)

17. Brian Donnelly (may call)

18. Verney Phinney (will call)

19. Walt Godfrey (may call)

20. Corporate Representative of Burns & Wilcox, Ltd. (will call)

21. Hunter Little (will call)

22. Matthew Evans (will call)

23. David Adamus (may call)

24. Any and all individuals required to authenticate photographs, images, or computer records, as necessary.

25. Any Corporate Representatives, as necessary.

26. Any and all impeachment, rehabilitation, and/or rebuttal witnesses, as necessary.

27. Any and all witnesses listed upon Plaintiff's Trial Witness List.

*Defendants' Expert Witnesses*:

1. F. David Famulari, Esq., B.C.S. (will call)

## 11. Estimated Trial Time

Plaintiff estimates that trial will take no more than two days.

Defendants estimate that trial will take four to six days.

## 12. Attorney's Fees

Plaintiff contends that Florida Statute § 627.428 is not applicable and that any dispute as to attorney's fees is governed by New York State law. Pursuant to Florida Statute § 627.428, there is no "maximum amount properly allowable" to Defendants as the prevailing party. If Defendants prevails, Defendants will seek reasonable costs and fees.

**[SPACE LEFT INTENTIONALLY BLANK]**

15

Dated: **April 4, 2022.**
**Respectfully and jointly submitted,**

| | |
|---|---|
| **GOLDMAN & HELLMAN** | **PERRY & NEBLETT, P.A.** |
| *Attorneys for Plaintiff* | *Attorneys for the Crabtrees* |
| 8751 W. Broward Boulevard, Suite 404 | 2550 South Bayshore Drive, Suite 211 |
| Fort Lauderdale, FL 33324 | Miami, Florida 33133 |
| Tel (954) 356-0460 | Telephone: (305) 865-8408 |
| Fax (954) 832-0878 | Facsimile: (305) 967-8182 |
| By: /s/ Jacqueline L. Goldman, Esq. | |
| JACQUELINE L. GOLDMAN, ESQ. | By: /s/ David Avellar Neblett, Esq., B.C.S. |
| FLA. BAR NO. 1005573 | DAVID AVELLAR NEBLETT, ESQ, B.C.S. |
| By: /s/ Steven E. Goldman | Florida Bar No.: 526371 |
| STEVEN E. GOLDMAN | |
| FLA. BAR. NO. 345210 | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 4, 2022, we electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all

counsel of record.

David A. Neblett, Esq.
James M. Mahaffey III, Esq.
FL. Bar No.: 105353
2550 South Bayshore Drive Suite 11
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile: (305) 967-8182
david@perryneblett.com
jmahaffey@perryneblett.com
tlevy@perryneblett.com

GOLDMAN & HELLMAN
*Attorneys for Plaintiff*
8751 W. Broward Boulevard
Suite 404
Fort Lauderdale, FL 33324
Tel (954) 356-0460
Fax (954) 832-0878


By: /s/ Steven E. Goldman
STEVEN E. GOLDMAN
FLA. BAR. NO. 345210

By: /s/ Jacqueline L. Goldman
JACQUELINE L. GOLDMAN
FLA. BAR. NO. 1005573

17