# *Expert Disclosure and Report of*
# *Mr. F. David Famulari, Esq., B.C.S.*

F. David Famulari, Esq., B.C.S.
Famulari and Butto, P.L.
2332 Galiano Street, Fl. 2
Coral Gables, FL 33134-5402

Re: *GREAT LAKES INSURANCE SE v. CRABTREE et al.*
Case No.: 9:20-cv-81544-RKA

**(i)      Statement of expert witness opinions.**

I am Board Certified in Admiralty and Maritime Law and I have been retained to testify in the above captioned matter. I have over 32 years of experience in the marine insurance industry, with an emphasis on: underwriting; underwriting standards and policies (or lack thereof); marine insurance claims; compliance; materiality; marine surveys; surveying; survey requirements; marine policies; compliance; "binders" of insurance; broker and agency relationships; agency (generally); insurance applications; costs; seaworthiness; cause of the loss; salvage; towing; yard and storage bills; mitigation; adjusting; vessel repairs and repair costs; cost of replacement of vessel; fair market values of vessel; fair market value of vessel parts and labor; marine insurance companies; insurance companies; requirements of adjusters; agency; requirements of surveyors; post-loss requirements; coverage; bad-faith; claims handling; and the policy and application at issue.

I have extensive, hands-on industry experience to opine as to the coverage practices and the coverage afforded to the Crabtrees' Vessel; underwriting; materiality; survey compliance;

GREAT LAKES and its representatives' underwriting policies (or lack thereof); and the coverage that had been afforded to the Crabtrees'Vessel prior to the subject loss. I will also opine as to GREAT LAKES' and its representatives' business practices; agency; the agents/brokers GREAT LAKES requires to operate in the United States; and statements/waivers made and effectuated by GREAT LAKES' hired adjusters/agents.

I carefully reviewed the survey report performed by Brian Stetler ("Stetler Survey") of the CRABTREES' Vessel along with the Letter of Compliance, dated April 17, 2019.  I compared these with the Status Reports authored by Captain Ian Allen, the Marine Insurance Application, the Declarations of Beric Anthony Usher and Roy Cramer, Concept Special Risks' Letter of Survey Recommendations Compliance, the CRABTREE'S work orders and receipts, Plaintiff's Statement of Undisputed Facts, and photos taken by Roy Cramer and others of the vessel pre and post loss. From my review and comparison of these documents and photos, it is my opinion that the CRABTREES had completed, or were in the process of completing all material recommendations..

It is my opinion that the CRABTREES did not make any material misrepresentations on the application for insurance or during the claims process that would prejudice GREAT LAKES by the CRABTREE'S survey, compliance, pre-loss duties and recommendations, and general post-loss compliance and assistance with the investigation of the claim. I determined this by reviewing: the Binder issued by GREAT LAKES; Concept Special Risks Underwriting Manual, Revised September 27, 2018; Concept Special Risks Underwriting Manual, Revised January 31, 2019; Concept Special Risks Brokers Manual, Updated March 2021; Concept Special Risks Brokers Manual, Updated November 2014; Concept Special Risks Quotation, dated April 12, 2019; Concept Special Risks Ltd Hurricane Questionnaire/plan; the Marine Insurance Application, and the Declarations of Beric Anthony Usher and Roy Cramer. I examined these documents in

conjunction with correspondence by and between Burns & Wilcox, Concept Special Risks, and all insurance representatives. Comparing these documents with all the inspection repair reports, the Burns & Wilcox Marine Quote Sheet, repair estimates and invoices and visual inspection of photographs of the vessel post-loss, there were no material misrepresentations and no prejudice with respect to the survey or the CRABTREES compliance.

It is undisputed that the subject loss was a fortuitous event caused by a fire on an adjacent vessel and that the loss was unrelated to any survey requirements or recommendations. After a detailed review of the "temporary" binder (that was in full force and effect at the time of the loss) and the Stetler survey, examined along with the Letter of Compliance, dated April 17, 2019, Plaintiffs Statement of Undisputed Facts, repair invoices and receipts, and various publications as to values for the vessel, I opine that the underwriter had sufficient information to issue the agreed value insurance policy worth $250,000 as is evident by the binder in full force and effect at the time of loss.

In considering the matter of agency, or lack thereof, between the CRABTREES and Burns & Wilcox, I reviewed Concept Special Risks Operating Instructions, signed by Burns & Wilcox May 21, 2015; the Burns & Wilcox Marine Quote Sheet; Concept Special Risks Brokers Manual, Updated March 2021; and Concept Special Risks Brokers Manual, Updated November 2014. I compared the information in these documents with the Declaration of Mr. Usher and all of the correspondence in this matter. Based on the plain reading of these documents, Burns & Wilcox had no authority to bind insurance risks on behalf of GREAT LAKES. Furthermore, when reviewing Concept's Operating Instructions and Usher's Declaration in conjunction with the CRABTREE'S emails and correspondence (or lack thereof), Plaintiffs' Statement of Uncontested Facts, and the Declarations submitted in support of the same, my opinion is that the CRABTREES did not have an "agency" relationship with Burns & Wilcox. The CRABTREES had no

3

correspondence with Burns & Wilcox, had no knowledge of the existence of Burns & Wilcox, nor did they exchange any documents or information with Burns & Wilcox. Prior to the issuance of the binder, after the loss, or after GREAT LAKES declined coverage, the CRABTREES had never communicated with Burns Wilcox.

**(ii)** **Data or other information considered by expert witness in forming opinions.**

I reviewed and considered the following information which served as the basis for my opinions contained herein:

- American Boat and Yacht Council, Inc. publications, suggestions, standards, or rules

- Burns & Wilcox Marine Quote Sheet

- Concept Special Risks "Temporary" Binder for policy no. CSRYP/175139, Bryan and Bethea Crabtree

- Concept Special Risks Underwriting Manual, Revised September 27, 2018

- Concept Special Risks Underwriting Manual, Revised January 31, 2019

- Concept Special Risks Brokers Manual, Updated March 2021

- Concept Special Risks Brokers Manual, Updated November 2014

- Concept Special Risks Ratings Guide V5, Last Amended October 26, 2017

- Concept Special Risks Quotation, dated April 12, 2019

- Concept Special Risks Operating Instructions, signed by Burns & Wilcox May 21, 2015

- Concept Special Risks Ltd Letter of Survey Recommendations Compliance

- Concept Special Risks Ltd Hurricane Questionnaire/plan

- Correspondence between Matthew Evans (Underwriting Manager, Burns & Wilcox) and Kathy Smith, (Administrative Manager at Concept Special Risk)

- Correspondence between parties and party representatives, including, but not limited to, Arnold & Arnold, Concept Special Risks, Burns & Wilcox, and GREAT LAKES

- Declaration of Beric Anthony Usher, dated October 14, 2021

- Declaration of Roy Cramer, surveyor retained by Arnold & Arnold, dated Oct. 14, 2021

- Discovery conducted by all parties

- Florida Statutes and laws

- Godfrey Fire Reconstruction Report

- Internet sites and publications

- Letter of Survey Request

- Letter of Compliance from the CRABTREES to GREAT LAKES, dated April 17, 2019 ("

- Marine Insurance Application for the CRABTREES

- Plaintiffs Statement of Material Facts Not in Dispute

- Personal knowledge of the above subject matters

- Plaintiff and its representatives' corporate and internal documents

- Pleadings

- Repair documents, invoices and receipts

- Riviera Beach Fire Report

- Status Reports authored by Captain Ian Allen, GREAT LAKES' hired adjuster while associated with the company Arnold & Arnold, Inc.

- S/V Brandison Hurricane Plan

- Visual inspection of photographs of the Vessel pre and pos-loss

- all other discovery exchanged, including the testimony of GREAT LAKES' 30(b)(6) Corporate Representative and correspondences and documents sent and received by GREAT LAKES, its agents, and employees.

**(iii)**     **Expert witness qualifications.**

I am Board Certified in Admiralty and Maritime Law and have been a Member of the Florida Bar since 1990. I grew up in a small seacoast town on the North Shore of Boston and after graduating from Colby College in Maine in 1974, I began a seagoing career as a commercial fishing boat captain on Georges Banks and the offshore canyons east of New England. Over thirteen years I spent an average of 200 days a year at sea and managed two offshore lobster boats. I was a member of the Atlantic Offshore Lobstermen's Association from 1978 through 1987 (Board of Directors 1982-1987) and worked with the newly formed National Marine Fisheries Service in developing fisheries management policies. I also consulted with marine insurance companies and the U.S. Coast Guard on fishing vessel safety issues and helped to create the framework for what eventually became the Fishing Vessel Safety Act of 1988.

In August of 1987, I came ashore and started law school three weeks later at the University of Miami. I had the good fortune to work as a law clerk at a well-known admiralty law firm in Miami all through law school and graduated *cum laude* from law school in 1990. I have worked with a major marine insurance broker in New England in assessing risks, and the placement of marine insurance on commercial vessels. I have been a maritime law practitioner ever since.

My legal practice currently consists primarily of maritime insurance defense, including Jones Act claims, collisions, salvage, passenger claims, Limitation of Liability, Longshore claims, 905 (b) claims, marina liability claims, engine damage claims, cargo claims, and dock damage claims. I also provide coverage opinions and underwriting advice of prominent United States marine insurers and managing general agents, including, but not limited to:

- National Union Fire Insurance Company

- New Hampshire Insurance Company

- American Home Insurance Company

- Granite State Insurance Company

- Insurance Company of the State of Pennsylvania

- United States Fire Insurance Company

- Berkley Fire and Marine Insurance Company

- RLI Insurance Company

- Starr Indemnity Insurance Company

- Sunderland Marine Mutual Insurance Company

- Islandwide Marie Agency (Managing General Agent)

- Seacoast Specialty Administrators (Managing General Agent)

During my 32 years as a board-certified maritime attorney, I evaluated claims and provided advice to insurers on loss prevention. Additionally, I attended numerous maritime seminars addressing vessel safety and vessel construction, marine insurance underwriting, and claims handling. I have been listed as an expert on a number of occasions in various matters but have not yet provided testimony at trial or deposition. My experience, in conjunction with the relevant documents and information provided to me in this case, served as the basis for my opinion

**(iv)** **Previous expert witness experience with Perry & Neblett.**

I worked with James Perry at Blank & Perry from 2000 to 2005. I worked with Perry & Neblett from June 2008 to October 2015.

I reserve the right to supplement my report/disclosure, as additional information is learned via discovery and/or when new information, reports, or facts become available, including rebuttal to any documents or opinions disclosed by Plaintiff.

F. DAVID FAMULARI, ESQ., B.C.S.

8