UNITED STATES DISTRICT COURT
SOUTHERN DISRTICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES INSURANCE SE,

    Plaintiff,

                                      Case No. 9:20-cv-81544-RKA

vs.

BRYAN CRABTREE, *et al.*,

    Defendants.
_____/

**PLAINTIFF'S RENEWED MOTION
TO STRIKE F. DAVID FAMULARI, ESQ. AS AN EXPERT**

Plaintiff/Counter-Defendant GREAT LAKES INSURANCE SE (hereinafter "GREAT LAKES"), by and through its undersigned attorneys, pursuant Fed. R. Civ. P. 37(c)(1), files this its Renewed Motion to Strike F. David Famulari, Esq. as an expert, under both *Daubert* and Fed. R. Civ. P. 26, as his new expert witness report [ECF No. 180-1] still does not provide any methodology or explanation as to how or why he has arrived at his opinions.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This action concerns a Temporary Binder for a policy of insurance that was issued by GREAT LAKES to the Defendants BRYAN and BETHEA CRABTREE (hereinafter "the CRABTREES"). A true and correct copy of the Temporary Binder was previously filed as ECF No. 1-2. On or about April 17, 2019, the CRABTREES submitted an application for a policy of marine insurance to cover the vessel identified therein, a Brandison, 2000 43' Privilege with Volvo twin 39hp diesel engine, JMA52U07B001 (hereinafter "the Vessel"). A true and correct copy of the application was previously filed as ECF No. 1-1. The application was submitted to GREAT

1

LAKES's underwriting and claims handling agent, Concept Special Risks, Ltd. (hereinafter "Concept"). As part of the application process, the Defendants submitted a Letter of Compliance, dated April 17, 2019 (hereinafter "the LOC"), in which they represented and "certif[ied]" that the Vessel had been surveyed by Brian Stetler on March 23, 2019. A true and correct copy of the LOC was previously filed as ECF No. 1-5. As a further part of the LOC, the Defendants certified that all but one of the recommendations contained in the survey had been complied with, except for some delamination on the port bow, which had an expected completion date of May 2, 2019. *Id.*

In reliance upon the truth of the material facts disclosed in the application and in the LOC, Concept made the decision to issue a Temporary Binder, Policy No. CSRYP/175139, affording $250,000.00 in first-party property damage coverage for the Vessel against the risks detailed therein for the period between April 23, 2019 through May 24, 2019. DE #1, at ¶16. As a condition of the Temporary Binder, certain information and documents were required to be submitted to Underwriters by May 24, 2019, or the Temporary Binder would be void from inception. ECF No. 1, at ¶11; ECF No. 1-2, at 1-2.

On May 7, 2019, the Vessel was damaged when the vessel next to it, the "SEA ALICE," was consumed by a fire. ECF No. 1, at ¶12. Once Concept received notice, the Plaintiff caused an investigation to be made into the facts and circumstances of the loss. *Id.* Despite numerous reminders to the Defendant via their agent reminding them of the outstanding items required by the Temporary Binder [*see* ECF No.'s 1-3 and 1-4], numerous documents were not received until June 7, 2019, after the Temporary Binder had already expired on May 24, 2019. ECF No. 1, at ¶¶'s 12-14. In addition, the Plaintiff's investigation determined that the Defendants had failed to complete numerous recommendations detailed in the Stetler survey, contrary to the representations

in the LOC. *Id.*, at ¶17. Thus, GREAT LAKES denied coverage for the fire loss on multiple bases: (1) failure to comply with the express terms of the Temporary Binder and, (2) misrepresentation of material facts in the LOC voided the Policy from its inception under the federal admiralty law doctrine of *uberrimae fidei*.

GREAT LAKES filed its initial Motion to Strike Mr. Famulari [ECF No. 116] on November 10, 2021. A true and correct copy of Mr. Famulari's original Expert Report was previously filed as ECF No. 116-2. The Court held a hearing on GREAT LAKES' first Motion to Strike on July 13, 2022. *See* ECF No. 177. A true and correct copy of the transcript of that hearing is attached hereto as Exhibit 1.

Following the hearing, the Court issued its Order [ECF No. 178], which granted GREAT LAKES' Motion to Strike without prejudice and directed the Defendants to file a new expert report on or before July 28, 2022. The Court's Order stated that the new Expert Report was to include only three opinions: Mr. Famulari's first opinion, his second opinion, and his fourth and fifth opinions combined into a single opinion. *Id.*, at 1.

The Court further ordered the new Expert Report could not contain any new opinions, and that it must "1) explain exactly which pieces of evidence Mr. Famulari reviewed in formulating each opinion and 2) describe with specificity the methodology Mr. Famulari used in reaching each opinion." *Id.*, at 1. No doubt assuming that Defendants' counsel would not make the same mistakes twice, the Court's Order did not create a new deadline by which GREAT LAKES must have filed a renewed motion to strike if it believed that the new Expert Report still failed to meet the *Daubert* standard and the requirements of Fed.R.Civ.P. 26(a)(2)(B).

Defendants' counsel filed Mr. Famulari's new Expert Report [ECF No. 180-1] on July 28,

3

2022. Plaintiff requested a copy of the transcript of the July 13th *Daubert* hearing on August 4, 2022, expecting to receive it via email the next day, August 5, 2022; however, due to circumstances outside the undersigned's control, the undersigned did not receive a copy of the transcript until August 10, 2022.

## SUMMARY OF THE DEFICIENCIES AND ERRORS IN MR. FAMULARI'S NEW EXPERT REPORT

Just as before, Mr. Famulari's new Expert Report completely fails to state how the information he reviewed formed the basis for his opinions, what methodology he used, and how those opinion are based on his scientific, technical, or specialized expertise. Stated otherwise, Mr. Famulari's new Expert Report does not comply with the Court's Order, and it still does not comply with the requirements of Fed.R.Civ.P. 26(a)(2)(B) or the *Daubert* standard.

For the sake of clarity, Mr. Famulari's new Expert Report is summarized according to each of the three opinions he was ordered to expand upon.

1. **Mr Famulari's First Opinion: "I will opine as to Great Lakes' and its representatives' business practices, agency, the agents/brokers Great Lakes requires to operate in the United States; and statements/waiver made and effectuated by Great Lakes's hired adjustors/agents."[1]**

Mr. Famulari's new Expert Report repeats this statement, but he offers no explanation as to how or why he arrived at the opinion that GREAT LAKES requires agents/brokers "to operate in the United States" or what "waivers" those "agents" may have made. *See* ECF No. 180-1, at 2. That statement is simply the end of the paragraph, and the following paragraph of his Expert Report addresses the next opinion. *See id*. There is no explanation whatsoever concerning GREAT LAKES' "business practices," as they relate to the topic of agency, nor does he address the industry

---

[1] Transcript of *Daubert* hearing, Ex. 1, at 11:9-13, describing this as Mr. Famulari's first opinion.

4

practice of surplus lines insurance in general, for that matter. *See id*. He does not even say what documents he reviewed or relied on. Just as before, Mr. Famulari's new Expert Report completely fails to state how any information in whatever documents he may have reviewed formed the basis for his opinion as to GREAT LAKES' alleged "agency" relationships, and it does not explain what methodology he used or what his reasons were in coming this opinion. He offers no explanation as to how his expertise in the field or knowledge of the industry practice may have come to bear on his opinion.

Confusingly, the issue of agency is addressed again later in his new Expert Report, but only as it relates to a brand-new opinion not included in his prior Expert Report: "my opinion is that the CRABTREES did not have an 'agency' relationship with Burns & Wilcox." *Id.*, at 3. His reasons for this opinion are essentially that the Defendants had no direct contact with Burns & Wilcox. *Id.*, at 304.

2. **Mr Famulari's Second Opinion: "My preliminary opinions are that the Crabtrees completed or were in the process of completing all material recommendations outlined in the report and survey of the Crabtrees' vessel."[2]**

Mr. Famulari's new Expert Report repeats this statement, although the word "preliminary" has been removed. *See* 180-1, at 2. Mr. Famulari states that he reviewed the Stetler Survey and the LOC, which he compared with other documents, including communications from Capt. Ian Allen, the Application, the Crabtrees' work orders and receipts, GREAT LAKES' Statement of Undisputed Facts, and photos of the vessel. *Id.* But just as before, Mr. Famulari's new Expert Report completely fails to state how the information in those documents formed the basis for his opinion as to what was or was not material, it does not explain what methodology he used or what

---

[2] Transcript of *Daubert* hearing, Ex. 1 at 13:18-21, describing this as Mr. Famulari's second opinion.

5

his reasons were. He offers no explanation as to how his expertise in the field or knowledge of industry practice may have come to bear on his opinion. He even fails to state which recommendations were or were not complete; without these most basic facts, how could he possibly opine as to whether or not the recommendations were material? It is entirely unclear to the undersigned what facts he relies upon.

> **3. Combine Mr Famulari's Fourth Opinion: "The underwriter had sufficient information to issue an agreed-value insurance policy worth 250K as evidenced by the binder in full force and effect at the time of the loss,"[3] and Fifth Opinion: "I opine that the Crabtrees did not make any material misrepresentations on the application for insurance or during the claims process."[4]**

The Defendant failed to combine these two opinions, as ordered by the Court, into one opinion essentially stating that the underwriter had sufficient information to issue a policy and therefore other information was not material to the issuance of a policy.[5] Rather than doing what the Court ordered, the new Expert Report repeats the fourth opinion verbatim, and impermissibly expands upon and alters the fifth opinion into an entirely new opinion. *See* 180-1, at 2-3.

As for the fourth opinion, concerning the alleged sufficiency of the information provided to the Underwriter, the new Expert Report states that he arrived at this conclusion after a "detailed review" of Temporary Binder, the Stetler Survey, the LOC, GREAT LAKES' Statement of Undisputed Facts, repair invoices and receipts and "various publications as to values for the vessel" (without stating what those publications are). *Id*., at 2. But again, Mr. Famulari fails to state how the information in those documents formed the basis for his opinion as to the sufficiency of the

---

[3] Transcript of *Daubert* hearing, Ex. 1 at 14:14-17, describing this as Mr. Famulari's fourth opinion.
[4] Transcript of *Daubert* hearing, Ex. 1 at 20:16-19, describing this as Mr. Famulari's fifth opinion.
[5] Transcript of *Daubert* hearing, Ex. 1 at 21:3-5 (in which the Court stated: "Those two, those last two are actually just one opinion. You have enough information, therefore, not material.") *Order*, ECF No. 178 ("That report shall contain […] his fourth and fifth opinions (combined into one).")

information, he does not explain what methodology he used or what his reasons were. He offers no explanation as to how his expertise in the field or knowledge of industry practice may have come to bear on his opinion. His new Expert Reports fails to even identify what information he is referring to as "sufficient;" it is entirely unclear what he is referring to.

The fifth opinion has changed into an unintelligible statement that appears to contain several new opinions. What was once "I opine that the Crabtrees did not make any material misrepresentations on the application for insurance or during the claims process" has now become the following nonsensical, much longer statement:

> It is my opinion that the CRABTREES did not make any material misrepresentations on the application for insurance or during the claims process that would prejudice GREAT LAKES by the CRABTREE'S survey, compliance, pre-loss duties and recommendations, and general postloss [sic] compliance and assistance with the investigation of the claim.

*See* 180-1, at 2. The undersigned is at a loss as to explain what opinion, or opinions, Mr. Famulari is attempting to communicate through the above statement. It appears to include an impermissible new opinion that such information was not material (not because it was not necessary to the issuance of as policy), but because it did not prejudice GREAT LAKES in some way. The issue of "prejudice" was never raised in Mr. Famulari's original Expert Report. *See* ECF No. 116-2. In support of this altered "opinion," Mr. Famulari claims he "reviewed" numerous documents, including the Temporary Binder, Concept's Underwriting Manual, and more, documents which he "examined […] in conjunction with correspondence between by and between Burns & Wilcox," Concept, "and all insurance representatives," which he then "compar[ed]… with all the inspection repair reports, the Burns & Wilcox quote sheet, repair estimates and invoices" post-loss photos of the Vessel, based upon which he states that "there were no material misrepresentations and no

prejudice with respect to the survey or the CRABTREES [sic] compliance." ECF No. 180-1, at 2-3. This final restatement of the opinion does not make his meaning any clearer.

Just as before, the new Expert Report contains no explanation of how Mr. Famulari arrived as the newest iteration of his fifth opinion: he fails to state how the information in those documents formed the basis for his opinion as to why the Defendants did not make material misrepresentations or how they did not prejudice GREAT LAKES, it does not explain what methodology he used or what his reasons were. Nor does he offer any explanation as to how his expertise in the field or knowledge of industry practice may have come to bear on his opinion. Moreover, it is entirely unclear what type of "prejudice" Mr. Famulari claims GREAT LAKES did not suffer; prejudice as to GREAT LAKES' issuance of the Temporary Binder? Prejudice as to GREAT LAKES' investigation of the claim? It is a mystery.

### 1. Mr. Famulari's New Expert Reports Impermissibly Contains Two New Opinions

As discussed above, Mr. Famulari's new Expert Report contains two new "opinions":

> 1) that "the CRABTREES did not have an 'agency' relationship with Burns & Wilcox," and 2) that "the CRABTREES did not make any material misrepresentations on the application for insurance or during the claims process that would prejudice GREAT LAKES by the CRABTREE'S survey, compliance, pre-loss duties and recommendations, and general postloss [sic] compliance and assistance with the investigation of the claim."

ECF 180-1, at 3, 2. Plaintiff respectfully urges that the Court strike the Defendants' new Expert Report for failure to comply with the Court's Order [ECF No. 178], which forbid the inclusion of any new opinions.

### 2. The New Expert Report Still Does Not Meet The Requirements of Fed. R. Civ. P. 26(a)(2)(B)

Rule 26(a)(2)(B)(i) states that an expert report must include a complete statement of all

8

opinions the witness will express and the basis and reasons for them and the facts and data considered by the witness in forming them. As explained above, Mr. Famulari's new Expert Report does not state how he arrived at those opinions. Plaintiff respectfully urges that the Court strike the Defendants' new Expert Report for failure to comply with the Court's Order, which required Mr. Famulari to "describe with specificity the methodology [he] used in reaching each opinion." ECF No. 178, at 1. The Order also required Mr. Famulari to describe what pieces of evidence he relied upon in coming to each opinion, and there is no statement whatsoever as to what documents he reviewed in coming to his first opinion. *See id*.

### 3. Mr. Famulari's Opinions Do Not Meet The *Daubert* Standard

Rule 702 compels the court to act as a "gatekeeper" over the admissibility of all expert scientific and technical evidence to make certain that unreliable testimony does not reach the factfinder. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Courts in this Circuit are required to engage in a "rigorous three-part inquiry" assessing whether:

> (1) The expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (quoting *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).

Particularly when a proposed expert is relying "solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*,

9

387 F.3d at 1261. As stated above, Mr. Famulari offers no explanation as to how he arrived at any of his opinions. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2010 WL 6397500, at *12 (S.D. Fla. Aug. 18, 2010) (excluding expert's report where "she makes no effort to explain how her experience guided her in opining that the information discussed is material (or important)").

Mr. Famulari claims to "have extensive, hands-on industry experience." ECF No. 180-1, at 1. Indeed, during the *Daubert* hearing, Defendants' counsel expressly stated that Mr. Famulari's opinions were primarily based on his experience with and understanding of industry practice surrounding insurance. *See* ex. 1, at 13:5-7 and 36:2-8. As explained above, nowhere in his new Expert Report does Mr. Famulari explain how his supposed "extensive, hands-on industry experience" came to bear on his opinions.

## CONCLUSION

Mr. Famulari should be precluded from offering expert witness testimony in this matter, as his new Expert Report still does not explain his methodology or reasoning in how he arrived at his opinions, it fails to combine the fourth and fifth opinions as directed, and it impermissibly contains two new opinions. Plaintiff respectfully urges that the Defendants not be given a second chance to correct these same errors.

WHEREFORE, Plaintiff/Counter-Defendant GREAT LAKES INSURANCE SE respectfully requests that this Court enter an Order striking the Mr. F. David Famulari, Esq. as an expert, and to award all such further relief as it may be deemed appropriate in the premises.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that they conferred with

David Neblett, Esq., counsel for the Defendants, via telephone on August 15, 2022, and the Defendants oppose the relief sought herein.

Dated:   August 16, 2022
      Fort Lauderdale, Florida

              Respectfully submitted,

              GOLDMAN & HELLMAN
              *Attorneys for Plaintiff*
              8751 W. Broward Boulevard
              Suite 404
              Fort Lauderdale, FL 33324
              Tel (954) 356-0460
              Fax (954) 832-0878


              By: /s/ Steven E. Goldman
              STEVEN E. GOLDMAN
              FLA. BAR. NO. 345210

              By: /s/ Jacqueline L. Goldman
              JACQUELINE L. GOLDMAN
              FLA. BAR. NO. 1005573

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 16, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record.

David A. Neblett, Esq.
James M. Mahaffey III, Esq.
FL. Bar No.: 105353
2550 South Bayshore Drive Suite 11
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile: (305) 967-8182
david@perryneblett.com
jmahaffey@perryneblett.com
tlevy@perryneblett.com

        GOLDMAN & HELLMAN
        *Attorneys for Plaintiff*
        8751 W. Broward Boulevard
        Suite 404
        Fort Lauderdale, FL 33324
        Tel (954) 356-0460
        Fax (954) 832-0878

        By: /s/ Steven E. Goldman
        STEVEN E. GOLDMAN
        FLA. BAR. NO. 345210

        By: /s/ Jacqueline L. Goldman
        JACQUELINE L. GOLDMAN
        FLA. BAR. NO. 1005573